#26242-a-GAS

**2012 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NICOLE A. HAGEDORN,                         Plaintiff and Appellee,

    v.

MICHAEL G. HAGEDORN,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

VICTORIA M. DUEHR of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Sioux Falls, South Dakota                   Attorneys for plaintiff
                                            and appellee.


GREGORY T. BREWERS of
Strange, Farrell, Johnson
  & Brewers, PC
Sioux Falls, South Dakota                   Attorneys for defendant
                                            and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **10/17/12**

#26242

SEVERSON, Justice

[¶1.]      Nicole and Michael Hagedorn were married for 15 years and had two daughters.  In December 2010, Nicole filed for divorce on the grounds of extreme cruelty and adultery.  The trial court granted Nicole a divorce on those grounds and awarded her alimony of $5,000 per month and attorney fees.  Michael appeals the awards of alimony and attorney fees.  We affirm the trial court.

## BACKGROUND

[¶2.]      Nicole and Michael Hagedorn married in Brookings, South Dakota, on August 10, 1996.  Prior to their marriage, Nicole and Michael dated for several years while Michael attended South Dakota State University in Brookings.  On March 25, 1993, Nicole gave birth to the couple's oldest daughter.  Nicole and Michael's second daughter was born on April 29, 2005.  Both Nicole and Michael are currently in their early 40s and in good health.

[¶3.]      Michael earned a bachelor's of science degree in economics and business from South Dakota State University.  After completing his degree in 1995, he worked in Minnesota before returning to Sioux Falls to work for Norwest Bank.  He began working for Central Billing Incorporated (CBI) in early 1998, selling and servicing cash registers and point of sale systems.  In 1999, he purchased the business for $27,500.  Michael paid for the purchase with loans from his father and a bank.  He paid both his father and the bank back within six months of the purchase.  The business grew as Michael expanded available product lines, added services, and marketed the company throughout the region.  In addition, at the time of trial, Michael worked on a contract basis for Sprint/MBO Partners providing

- 1 -

technical support services at the Communication Service for the Deaf Relay Services location in Sioux Falls.

[¶4.]　　　Nicole earned an applied associate of science degree from Killian Community College in Sioux Falls.  After receiving her degree, she sought work as a legal assistant, but was unsuccessful.  She found full-time employment as a mailroom clerk, then a receptionist, and then a flexible benefits claims processor at Sanford Health in Sioux Falls.  Nicole worked at Sanford for over five years before she and Michael decided that it would be better for the family and the business if Nicole worked at CBI.  Nicole began working full-time as an administrative assistant at CBI and continued working there until early 2011.

[¶5.]　　　Throughout their marriage, Michael and Nicole disagreed about Michael's drinking habits.  Michael frequently spent time on the weekends drinking with friends and family.  Nicole testified that when Michael was drinking he was verbally abusive and called her a variety of derogatory names.

[¶6.]　　　Beginning in the summer and early fall of 2009, Nicole and Michael lived separately. When Michael lived in the family's cabin at Lake Madison, Nicole lived with their daughters in the family's Sioux Falls residence.  The parties switched locations during the summer of 2010 and switched back for the school year.  Michael also rented an apartment in Sioux Falls for a period of time.  During the separation, Michael began dating a family friend.  His relationship with the woman continued off and on through June 2011.  Additionally, Michael admitted to Nicole that he was having a relationship with another woman in early 2010.

[¶7.]     In December 2010, Nicole filed for divorce.  A trial was held from September 27 through 29, 2011.  At trial, the most significant issues were alimony and division of property.  Nicole and Michael agreed that Michael would retain ownership of CBI.  CBI produced between $215,000 and $276,000 of income per year in the last three years for the family, though these figures also include Michael's income from his work for Sprint/MBO Partners.  A vocational expert evaluated Nicole's earning capacity and testified at trial that she would likely earn between $10 and $12 per hour in her future employment.

[¶8.]     Judge Caldwell awarded alimony to Nicole in the amount of $5,000 per month for life or until she remarries.  This award was slightly less than Nicole's projected budget of $5,135 per month.  Judge Caldwell also awarded attorney fees and costs, totaling $14,419.43, to Nicole.  Michael appeals the judgment of alimony and attorney fees.  Michael argues that the awards are an abuse of discretion by the trial court.

STANDARD OF REVIEW

[¶9.]     The standard of review for alimony determinations and awarding attorney fees in divorce cases is abuse of discretion.  *Dejong v. Dejong*, 2003 S.D. 77, ¶ 5, 666 N.W.2d 464, 467; *Voelker v. Voelker*, 520 N.W.2d 903, 908 (S.D. 1994) (citing *Ryken v. Ryken*, 461 N.W.2d 122, 128 (S.D. 1990); *Garnos v. Garnos*, 376 N.W.2d 571, 574 (S.D. 1985)).  The trial court's findings of fact are not set aside "unless they are clearly erroneous."  *Dejong*, 2003 S.D. 77, ¶5, 666 N.W.2d at 467 (citing *Keller v. Keller*, 2003 S.D. 36, ¶8, 660 N.W.2d 619, 622).

## DISCUSSION

[¶10.]  **1.**  **Whether the trial court abused its discretion by awarding alimony in the amount of $5,000 per month for life.**

[¶11.]  The party requesting alimony has the burden to "'establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of that need.'" *Anderson v. Anderson*, 2002 S.D. 154, ¶ 12, 655 N.W.2d 104, 107 (quoting *Urban v. Urban*, 1998 S.D. 29, ¶7, 576 N.W.2d 873, 875). The trial court should consider a number of factors to determine a party's need for alimony and the amount and duration of alimony. *Id.* These factors are "(1) [the] length of the marriage; (2) [the] respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in the termination of the marriage." *Id.* ¶ 12, at 107 (citing *Urban*, 1998 S.D. 29, ¶ 8, 576 N.W.2d at 875; *Christians v. Christians*, 2001 S.D. 142, ¶ 16, 637 N.W.2d 377, 381).

[¶12.]  Here, the trial court found a variety of factors to support the award of $5,000 per month to Nicole. Nicole and Michael were married for 15 years, though they had a relationship for almost 20 years. The trial court also considered the earning power of both Nicole and Michael. The parties agreed that Michael would receive the family business. Michael's earning capacity, including CBI and his work with Sprint/MBO Partners, is around $19,000 per month. Nicole's earning capacity is between $10 and $12 per hour. Nicole testified that, because of her age, she is unlikely to return to school to gain additional education or skills. In addition, the trial court found that both Nicole and Michael are in their early 40s and in good health and physical condition. The trial court also found that the parties lived a

middle-class lifestyle and Nicole's social standing or station in life would decline without alimony. Finally, the trial court granted the divorce to Nicole on the grounds of extreme cruelty and adultery, finding Michael at fault.

[¶13.] Michael argues that the trial court erred because the alimony award pays all of Nicole's budgeted expenses and would allow her to sit idle. The trial court found that Nicole's budget of $5,135 per month was reasonable and justified to maintain the standard of living she had throughout the marriage. After taxes are paid on the monthly alimony, Nicole will have just under $4,200 for her expenses. After taxes are paid and alimony is taken out of Michel's monthly income, he will have almost $9,800 for his expenses.

[¶14.] Michael cites to the *Wallahan* case for the proposition that alimony should not be awarded in an amount that would allow a spouse who can work to "'sit in idleness.'" *Wallahan v. Wallahan*, 284 N.W.2d 21, 27 (S.D. 1979) (quoting *Guindon v. Guindon*, 256 N.W.2d 894, 898 (S.D. 1977)). In *Wallahan*, we stated that alimony will not be provided in an amount that would "allow a wife capable of work to sit in idleness." *Id.* (internal quotation marks omitted). However, neither will alimony be denied because a wife may "obtain employment and support herself." *Id.* (internal quotation marks omitted). The trial court found that Nicole has not been idle. She has sought employment since ending her employment at CBI and made a good faith effort to obtain a position.

[¶15.] The trial court properly considered the factors above in making an alimony award to Nicole. In particular, the trial court considered Michael's monthly income, the fact that he would receive the primary income producing asset, Nicole's

employment prospects, and current economic conditions. Considering the evidence in the record, the findings of fact, and conclusions of law of the trial court, we cannot say that the trial court abused its discretion in awarding alimony to Nicole in the amount of $5,000 per month for life or until she remarries.

[¶16.] **2.** **Whether the trial court abused its discretion by awarding $14,419.43 for attorney fees.**

[¶17.] Allowing an award for attorney fees is within the discretion of the trial court. *Voelker*, 520 N.W.2d at 908. A trial court should consider a number of elements to determine whether and in what amount attorney fees should be awarded. *Id.* The elements include:

> (1) The amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and the drawing of the cause, (5) the discovery procedures utilized, (6) whether there existed complicated legal problems, (7) the time required to try the cause, and (8) whether written briefs were required.

*Id.* (citing *Peterson v. Peterson*, 449 N.W.2d 835, 840 (S.D. 1989); *Garnos*, 376 N.W.2d at 574-75). The trial court should also consider "the property owned by each of the parties, their relative incomes, whether the property is in liquid or fixed assets, and whether the actions of a party unreasonably increased the time spent on the case." *Id.* (citing *Garnos*, 376 N.W.2d at 575).

[¶18.] The trial court valued and divided a variety of marital property at trial. Nicole's attorney submitted detailed information about her fees and the time spent on a variety of tasks leading up to the trial. The trial took place over three days. The trial court found that Michael had a greater income and the largest income producing asset of the marriage, CBI. Additionally, the trial court found

that Michael caused confusion regarding the profit and loss statements of CBI and his other income, resulting in additional hours of work on the case.

[¶19.]     Michael argues that Nicole's award of $14,419.43 of attorney fees is duplicative of an earlier award of $5,000. This argument is not supported by the record.

[¶20.]     Further, Michael argues that the award of attorney fees had no justification. As noted above, the trial court made specific findings about the ownership of assets and income from those assets. The trial court found that Michael had significant income producing assets and that he had increased the time spent on the case. These findings are specific to the factors that we require trial courts to consider when awarding attorney fees.

[¶21.]     The trial court properly considered the factors above in making an award of attorney fees to Nicole. In particular, the trial court considered that Michael would receive the income producing asset and had the ability to pay for the attorney fees. Considering the evidence in the record, the findings of fact, and conclusions of law of the trial court, we cannot say that the trial court abused its discretion in awarding attorney fees of $14,419.43 to Nicole.

## CONCLUSION

[¶22.]     The trial court did not abuse its discretion in awarding alimony or attorney fees to Nicole. We affirm.

[¶23.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.