#27184-aff in pt, rev in pt & rem-GAS
**2015 S.D. 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT A. SCHERER,                                Plaintiff and Appellant,

    v.

BETTY J. SCHERER,                                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge

THE HONORABLE KATHLEEN CALDWELL
Retired Judge

\* \* \* \*

STACY F. KOOISTRA
STEVEN J. MORGANS
SHARLA V. SVENNES of
Myers & Billion LLP
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                             and appellant.


GREGORY T. BREWERS of
Strange, Farrell, Johnson
  & Brewers, PC
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2015
OPINION FILED **05/13/15**

SEVERSON, Justice

[¶1.]     Robert and Betty obtained a divorce on July 29, 2014.  Robert appeals the circuit court's determination of marital assets, division of property, and alimony award to Betty.  He also appeals the court granting Betty a divorce on the grounds of extreme cruelty.  We reverse in part and remand.

## Background

[¶2.]     Robert Scherer and Betty Scherer met through mutual friends in 1997. They began living together in 2000 and were married in 2002.  At the time of the divorce both Robert and Betty were 60 years old.  This was Robert's second marriage.  He has two adult children from the first marriage.  Betty had two previous marriages and has one adult son from her first marriage.  When they married, both parties were employed and each owned their own homes, which they sold in order to buy a new home together.  Betty worked as a licensed practical nurse until 2005 when she was forced to retire and go on social security disability due to repeated back injuries.  Robert entered the marriage with what the court characterized as a "fledgling business."  He also worked as a firefighter until his retirement in 2005.  At the time of the marriage, and thereafter, the parties agreed to maintain separate bank accounts.  The circuit court found that this was primarily due to Robert wanting to keep his finances separate.  They divided financial responsibilities.  Robert paid their house payment, utilities, and car expenses, while Betty bought groceries, clothes, and items for inside and outside the home.

[¶3.] The main dispute in this divorce is the inclusion of three businesses—Scherer Corrugating and Machine, Inc., Scherer Design Engineering, Inc., and Scherer Properties, LLC—in the marital estate. The court found that Robert made several financial transactions in the year before he separated from Betty, which showed a pattern of trying to minimize the marital estate. Robert sold 50% of Scherer Properties, LLC for $100,000 to his son in December of 2010. No appraisal was done at the time of the sale. The appraised value at the time of the divorce was $1,695,000. In January of 2011, Robert sold 40% of Scherer Corrugating and Machine, Inc. to his son and one of his employees for $1,025,000 each. He guaranteed a $500,000 loan for each of them, and the son and employee each gave Robert a promissory note for the additional $525,000. At the time of the divorce, Scherer Design and Scherer Corrugating had an appraised value of $2,673,000. The court noted that "no credible evidence of the value of any property owned by either party at the time of their marriage" was offered.

[¶4.] After including Robert's remaining interests in the businesses in the marital estate, the court found that the value of the net marital estate totaled $5,081,715. It awarded Robert more than half of the marital estate, including the businesses. In order to effect an equitable division, the court ordered him to pay cash to Betty in the amount of $2,000,000. He was to pay the sum of $500,000 immediately and the balance at a rate of $250,000 per year on each September 30, beginning in 2015, plus interest at 5.25% per annum until the balance was paid in full. Further, the court awarded Betty monthly alimony of $10,000 per month until her death or remarriage; the alimony was to continue as an obligation of Robert's

estate in the event he died before she did. The court granted a divorce to Betty on the grounds of extreme cruelty. Robert appeals asserting that the court erred by: (1) including premarital property in the marital estate, (2) granting Betty alimony without considering the property division, (3) ordering the alimony as a continuing obligation of Robert's estate, (4) failing to consider that equity requires Robert receive a greater share of the marital assets, and (5) granting Betty a divorce on the grounds of extreme cruelty.

## Standard of Review

[¶5.] "A trial court's division of property will not be overturned by this [C]ourt unless it appears the trial court abused its discretion." *Pellegrin v. Pellegrin*, 1998 S.D. 19, ¶ 10, 574 N.W.2d 644, 646. "'Findings of fact are not set aside unless this [C]ourt finds them to be clearly erroneous[.]'" *Id.* ¶ 9 (quoting *Osman v. Keating–Osman*, 521 N.W.2d 655, 657 (S.D. 1994)).

## Analysis

*Property division*

[¶6.] Robert contends that the court erred by including pre-marital property in the marital estate. He explains that he and Betty maintained separate property, such as the businesses, pursuant to their statutory right under SDCL 25-2-4.[1] Therefore, he argues the court improperly redefined the parties' relationship when it subjected these items to division. Robert's position is contrary to our case law and

---

1.  SDCL 25-2-4 provides: "Neither husband nor wife has any interest in the property of the other, excepting their respective rights for support as specifically provided by law, and except that neither can be excluded from the other's dwelling."

misconstrues the right to maintain separate property. "[O]*utside* the context of *divorce*, support, and homestead, marriage does not vest in one spouse an interest in the other's separate property." *Niesche v. Wilkinson*, 2013 S.D. 90, ¶ 18, 841 N.W.2d 250, 255 (emphasis added). "When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties." SDCL 25-4-44. "In a divorce, a court is dividing the spouses' property irrespective of their ownership interests." *Niesche*, 2013 S.D. 90, ¶ 21, 841 N.W.2d at 256.

[¶7.] Robert asserts that the unique facts—the parties married at an older age after previous marriages and deliberately maintained separate finances—distinguish this case. However, "'[t]his Court has consistently held that the trial court has discretion in determining how to consider *premarital assets and gifts during marriage*; [whether to include or exclude them from the marital estate].'" *Billion v. Billion*, 1996 S.D. 101, ¶ 20, 553 N.W.2d 226, 232 (quoting *Strickland v. Strickland*, 470 N.W.2d 832, 836 (S.D. 1991)). The court has discretion to exclude premarital assets from the marital estate, but it is not required to do so automatically.

[¶8.] Second, Robert asserts that Betty made de minimis contributions to the acquisition and maintenance of Robert's businesses, and they should, therefore, be set aside as non-marital property. A circuit court should consider the following factors when making a property division: "(1) the duration of the marriage; (2) the

value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets." *Novak v. Novak*, 2006 S.D. 34, ¶ 4, 713 N.W.2d 551, 552. Two conditions must be met before a court should set aside property as non-marital. "Only in the case where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as 'non-marital' property." *Billion*, 1996 S.D. 101, ¶ 21, 553 N.W.2d at 232.

[¶9.] Even if we assume Betty's contributions to the acquisition or maintenance of the businesses were de minimis, the circuit court found that Betty is in need of support. Such a finding is not clearly erroneous. Betty has significant health issues and experiences a lot of pain. She suffered a heart attack in 2005. Further, she suffers from osteoarthritis that has a significant debilitating effect on her hands, feet, and back, along with scoliosis of the spine that causes her to be hunched over. A metal rod and 24 screws were placed in her back. She also has a hyperthyroid condition. As a result, she is unable to work and has no income other than social security disability benefits of $14,310 per year, of which $4,359 is withheld for Medicare premiums. Therefore, the court did not abuse its discretion by including the businesses in the marital estate.

*Alimony*

[¶10.] SDCL 25-4-41 grants the court discretion to "compel one party to make such suitable allowance to the other party for support during the life of that other

party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects." The circuit court should consider the following factors when determining alimony: the parties' (1) length of marriage; (2) earning capacity; (3) financial condition after the property division; (4) age, health, and physical condition; (5) station in life or social standing; (6) relative fault in the termination of the marriage. *Fausch v. Fausch*, 2005 S.D. 63, ¶ 17, 697 N.W.2d 748, 755. We will not reverse a court's decision regarding alimony absent an abuse of discretion. *Id.* "A circuit court is required to consider the allocation of property and spousal support together." *Terca v. Terca*, 2008 S.D. 99, ¶ 28, 757 N.W.2d 319, 326. "The symbiotic relationship between property division and spousal support requires consideration of the two together, as an award of more assets can eliminate or reduce the need for spousal support and vice versa." *Id.* Therefore, "[t]he trial court's award of alimony and the division of property are considered together on appeal to determine whether the trial court abused its discretion." *Krage v. Krage*, 329 N.W.2d 878, 879 (S.D. 1983).

[¶11.]     In this case, the court awarded Betty two million in cash along with $10,000 monthly alimony to continue as an obligation of Robert's estate in the event that Betty does not remarry and lives longer than Robert. The record does not reflect that the circuit court considered the allocation of property and spousal support together. The court made no specific findings regarding Betty's need for alimony other than a general statement that Betty's budget was $6,266 per month and that she has a need for support because her expenses exceed her ability to pay

them. At trial, Betty stated that an alimony payment would not be sufficient for her needs absent the amount she sought from the property division. However, she testified that if the court granted her requested property division, she did not need alimony. The following colloquy occurred:

> **Counsel for Appellant:** Okay what are you asking for there?
>
> **Betty:** I am asking for $2,255,000.
>
> **Counsel:** And on top of that, you're asking for ten-thousand dollars a month in alimony?
>
> **Betty:** If I get the two million dollars, I don't need the ten-thousand dollars a month alimony.
>
> **Counsel:** And if you get the $10,000 a month alimony, is it fair to say then that you don't need the 2,255,000?
>
> **Betty:** No. That is not right. I still need the money.

"A party requesting such alimony 'must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of that need.'" *Fausch*, 2005 S.D. 63, ¶ 17, 697 N.W.2d at 755 (quoting *Urban v. Urban*, 1998 S.D. 29, ¶ 7, 576 N.W.2d 873, 875). "[A]n alimony award is also based upon the respective financial conditions of the parties *after* the property division . . . ." *Krage*, 329 N.W.2d at 879 (emphasis added). The circuit court failed to consider Betty's admission that she would not need the alimony if granted the two million dollars she sought from the property division, an amount that she ultimately received from the division. In light of the property division and Betty's admission, the record does not support the court's finding that Betty has demonstrated a need for the amount of alimony granted in this case.

[¶12.]     Further, Robert asserts that the court erred by granting alimony as an ongoing obligation of his estate. We have previously stated that "[g]enerally, in the

absence of an agreement between the spouses, the obligation to pay alimony ceases on the death of the obligor spouse." *Lodde v. Lodde*, 420 N.W.2d 20, 21 (S.D. 1988). No such agreement existed between the parties in this case. However, as in *Barton v. Barton*, "we need not determine whether a court may, under any factual circumstances, extend an alimony obligation beyond the obligor's death." 2012 S.D. 44, ¶ 21, 815 N.W.2d 553, 559. In this case, the record does not reflect that Betty has a "need for support beyond [Robert's] death and thus, the court abused its discretion in extending the alimony award beyond [Robert's] death." *See id.* ¶ 23.

*Equity*

[¶13.] Robert contends, in the alternative, that if we uphold the court's inclusion of the businesses in the marital estate, then the court erred by failing to consider "equity and the circumstances of the parties[,]" according to SDCL 25-4-44. He maintains that equity requires that he receive a greater share of the assets because his contribution to the marital estate was substantially greater than Betty's contribution. As we have stated, we will not disturb the court's decision absent an abuse of discretion. *Pellegrin*, 1998 S.D. 19, ¶ 10, 574 N.W.2d at 646.

[¶14.] Contribution of the parties to the acquisition of marital assets is a factor to be considered in dividing property, but it is not dispositive. Here, the court properly considered all the factors when dividing the property. The parties were married twelve years; no evidence existed as to the value of any property brought into the marriage; they were each 60 years old at the time of the divorce; Betty suffers serious health problems that impede her ability to earn an income; Robert has some physical ailments but those do not limit his ability to work and earn an

income; Robert earns substantial income while Betty receives only social security disability; Robert developed the businesses while Betty worked until 2005, and contributed to the home; and Robert would receive the only income producing asset. In light of Robert's work with the businesses, the court awarded him the businesses. Further, even though the court found that he had tried to minimize the marital estate by selling interests in the businesses, the court only included in the marital estate the valuation of the interests which remained after the sales. Therefore, the court did not abuse its discretion when it awarded Betty the sum of two million dollars.

*Extreme Cruelty*

[¶15.]      Robert contends that the circuit court erred by granting Betty a divorce on the grounds of extreme cruelty. "Extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." SDCL 25-4-4. "In a marital setting, the definition of extreme cruelty differs according to the personalities of the parties involved." *Rykhus v. Rykhus*, 319 N.W.2d 167, 169 (S.D. 1982). "We must view the evidence in light of the full context of the marriage and not in the narrow light of isolated incidents." *Id.* The court found that Robert was not available to Betty as a companion or housemate due to his work schedule. Further, Betty testified that she felt betrayed by Robert due to his admission to her of having sexual intercourse with her while she was sleeping. This admission came after he was undressing her when he thought she was asleep. Betty has serious health problems as outlined earlier in this opinion. *Supra* ¶ 9. As a result, she had problems with the steps in the parties' split-level

home, but Robert liked the home and testified that Betty's problems were from having three dogs that needed to go out ten or more times each day. They often argued about moving from the home. Both parties felt that they were not a priority in each other's life. The court also found that Robert would not reveal his financial condition to Betty, insisted that their property be held separately, and engaged in a pattern of trying to minimize the marital estate. Although the court found fault to exist on both sides and that Robert was more at fault than Betty, the court's findings of fact on critical issues of fault largely recited what witnesses testified to and lack a determination of which facts the court found were proven by a preponderance of the evidence. Further, the conclusions of law are devoid of any determination that extreme cruelty was proven from those facts. *See* SDCL 15-6-52(a) ("In all actions tried upon the facts without a jury . . . the court shall . . . find the facts specially and state separately its conclusions of law thereon . . . ."). Accordingly, we reverse the circuit court's grant of divorce on the grounds of extreme cruelty.

## Conclusion

[¶16.]        The court properly exercised its discretion when making an equitable division of the marital estate. However, it erred by failing to consider Betty's need for or an amount of alimony in light of the property division. Further, the court's findings and conclusions regarding the grounds of extreme cruelty are insufficient. On remand, the court must consider the property division and alimony together to determine if Betty has demonstrated a need for alimony, and it must determine

whether extreme cruelty existed.  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[¶17.]        GILBERTSON, Chief Justice, and ZINTER, WILBUR and KERN, Justices, concur.