#27366-aff in pt & rev in pt-SLZ

**2016 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CHRISTINA KOLBACH,                                Plaintiff and Appellee,

   v.

JOSEPH KOLBACH,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
DEUEL COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RONALD K. ROEHR
Retired Judge

\* \* \* \*

RICK A. RIBSTEIN
JENNIFER GOLDAMMER of
Ribstein & Hogan Law Firm
Brookings, South Dakota                       Attorneys for plaintiff
                                              and appellee.


RICK L. RAMSTAD of
Crew & Crew, PC
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2016

OPINION FILED **03/30/16**

#27366

ZINTER, Justice

[¶1.]     In this divorce case, Joseph Kolbach appeals the circuit court's decisions regarding custody of the children, relocation of the custodial parent, division of property, award of alimony, and award of attorney's fees.  We affirm the circuit court's custody and relocation decisions.  The alimony award is reversed, and the property division is remanded for revision in accordance with this opinion.

*Facts and Procedural History*

[¶2.]     Christina and Joseph Kolbach married in July 2007.  They have two children, six-year-old Kiana and five-year-old Kipp.  Joseph also has an eleven-year-old child (Amelia) from a prior marriage.  Amelia lives with her mother in Sioux Falls.  Joseph regularly exercises parenting time with Amelia, including alternating weekends.

[¶3.]     Joseph is a successful businessperson.  He began working in the wind energy business when he was eighteen.  In 1999, he founded Energy Maintenance Systems (EMS).  In 2008, he sold EMS for approximately $33 million.  In 2008, Joseph purchased the Buffalo Ridge Resort in Gary, South Dakota and began remodeling and restoring the property.  The resort opened in 2009.

[¶4.]     Christina graduated from college in 2004.  Prior to marrying Joseph, she worked in Fort Worth, Texas for an import-export business.  During their marriage, Christina worked as Joseph's personal assistant for a time and assisted in the remodeling of the Buffalo Ridge Resort.  Christina's primary role was being a homemaker and caretaker of the children.

[¶5.]    In June 2013, Christina and the children left the marital residence and Christina filed for divorce. She sought divorce on the grounds of irreconcilable differences and extreme cruelty. Joseph answered and filed a counterclaim on the same grounds. In July 2014, Christina notified Joseph of her intent to relocate to Sioux Falls with the children. Joseph filed an objection. The parties' divorce trial began on August 13. The trial continued on August 14 and 15. Sometime around August 18, Christina moved with the children to Sioux Falls and enrolled Kiana in a school that utilizes a Spanish-immersion curriculum. Joseph filed a motion to restrain Christina's relocation. The trial resumed on September 16 and 30, and the court declined to rule on the relocation issue until the close of evidence in the divorce trial. The trial concluded on October 1, 2014.

[¶6.]    In its judgment and decree, the court awarded joint legal custody of the children with primary physical custody to Christina. The court also allowed Christina to continue to reside in Sioux Falls. The court awarded Christina certain property that, together with a $1,050,000 cash equalization payment, equaled 11.98% of the parties' net assets. The court also ordered Joseph to pay $1,000 per month in permanent alimony and $70,000 in attorney's fees and costs. Joseph appeals each of these rulings.

### Decision

### Child Custody

[¶7.]    Joseph argues that the circuit court abused its discretion in awarding primary physical custody to Christina. Joseph contends the court's review of the

traditional child custody factors[1] was incomplete and its findings were inconsistent with the record. *See Severson v. Hutchinson*, 2013 S.D. 70, ¶ 16, 838 N.W.2d 72, 76 (stating that a circuit court abuses its discretion in a child custody determination when its "review of the traditional factors bearing on the best interests of the child[ren] is scant or incomplete").

[¶8.]    The circuit court's review of the traditional child custody factors was not scant, incomplete, or inconsistent with the record. The court ordered a child custody evaluation by a licensed social worker. The custody evaluator conducted a thorough evaluation of the familial situation and addressed the best interests of the children under each of the traditional factors. The custody evaluator recommended joint legal custody with Christina having primary physical custody. The court found the evaluator's testimony and report professional and helpful. The court ultimately adopted the custody evaluator's recommendation. The court also addressed each of the traditional factors in its memorandum opinion.[2] The circuit

---

1.    *See Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶¶ 24-34, 591 N.W.2d 798, 807-10 (delineating traditional child custody factors).

2.    Joseph claims the court made no finding on the following points: no finding that Christina has mental health issues; no finding about the benefits of the Spanish-immersion program; and no finding with respect to the two months the children resided in Sioux Falls. Regarding Christina's "mental health issues," Joseph did not introduce evidence that Christina had a mental health disorder that would affect her ability to raise the children. On the contrary, although the record reflects both parties had a psychological diagnosis, the court found that neither diagnosis affected either party's ability to parent the children. Regarding the Spanish-immersion program and living two-months in Sioux Falls, our review of the record indicates that the court took a balanced and systematic approach to ascertaining the custody situation that was in the children's best interest. The court is not bound to make a factual finding on every fact testified to at trial.

(continued . . .)

court's findings on each of the traditional factors is supported by the custody evaluation and the record. The circuit court did not abuse its discretion in awarding primary physical custody to Christina.[3]

[¶9.] Joseph next argues that the circuit court abused its discretion in allowing Christina to relocate to Sioux Falls. As part of the court's custody-best-interest analysis, the court noted that it was in the children's best interests to have substantial and regular contact with both parents. The court also noted that Joseph had considerable flexibility to travel and he regularly visited Amelia in Sioux Falls. The court further found that Christina's prospects for both continuing education and employment were substantially greater in Sioux Falls. Like the

---

(. . . continued)

Joseph also contends that the court's parenting plan unnecessarily burdens the children's relationship with Amelia. However, Amelia lives with her mother in Sioux Falls. Therefore, the court's parenting plan places the siblings in closer proximity to each other than if Joseph had custody in Gary.

3. Joseph contends that a number of facts are inconsistent with the court's finding that Christina was a committed and fit parent who could provide a stable and consistent home for the children. Specifically, he points out that: despite having a college education, Christina has not pursued employment; Christina rejected spiritual counseling from her pastor; Christina reads books about apocalyptic end times and alien inhabitation; and, Christina did not provide Joseph with more parenting time than the visitation order required. These facts do not render the circuit court's finding inconsistent. There is evidence in the record that Christina and Joseph agreed that Christina would stay at home and care for the children; Christina's refusal to counsel with her pastor and her choice of literature were not shown to affect the best interest of the children; and Joseph concedes that Christina followed the visitation order "to the letter." Further, as noted above, the circuit court's finding regarding parental fitness was consistent with that of the custody evaluator. "It is not for this Court, but for the trial court, to gauge the credibility of the witnesses and to weigh the significance of their testimony." *Fuerstenberg*, 1999 S.D. 35, ¶ 22, 591 N.W.2d at 807.

circuit court, this Court has recognized that in certain circumstances, an advantageous situation for a custodial parent may also be in the best interests of the children. *Brosnan v. Brosnan*, 2013 S.D. 81, ¶¶ 27-28, 840 N.W.2d 240, 249-50 ("The family unit may be one factor, among others, that circuit courts consider in deciding whether relocation is in the best interests of the child."). Considering all the circumstances, the circuit court did not abuse its discretion in allowing Christina to remain in Sioux Falls with the children.[4]

[¶10.] Joseph finally argues that the circuit court abused its discretion in not awarding joint physical custody. Under a 2014 statutory scheme, "[i]n any custody dispute between parents, *upon application* of either parent, the court shall consider granting joint physical custody of a minor child." SDCL 25-4A-21 (emphasis added). The new scheme contemplates the filing of a "petition" for joint custody. *See* SDCL 25-4A-23. But here, Joseph did not make this type of specific request for joint custody. Joseph did not seek joint physical custody in his pleadings, and although he mentioned the joint physical custody factors in his post-trial brief, he only requested that he be granted primary physical custody. Because Joseph never petitioned or applied for joint custody, and because Joseph only requested primary physical custody, he was not entitled to a circuit court determination under the new statutes.

---

4.  South Dakota Shared Parenting, Inc., filed an amicus curiae brief arguing for the adoption of factors to guide courts considering relocation requests. We decline to consider such factors without the benefit of appellate advocacy on both sides of this issue.

[¶11.]     Despite Joseph's failure to make an application for joint physical custody, the circuit court was aware of the new statutes and analyzed the joint custody factors delineated in SDCL 25-4A-24. The court found that joint physical custody would not be in the children's best interests. The court explained that one party was living in Sioux Falls and the other in Gary. Considering the substantial travel that would be required, Joseph has not established that the court abused its discretion in not awarding joint physical custody under SDCL 25-4A-21. We affirm the circuit court's award of joint legal custody with primary physical custody to Christina.

*Property Division*

[¶12.]     Joseph argues that the circuit court abused its discretion in dividing the parties' property. He first contends that the court erroneously recaptured and divided $344,667 in gifts made two years before the divorce trial. The record reflects that Joseph gifted this money to key business associates and family after the sale of EMS. It appears that Christina was involved to some extent in the gifting—she signed corresponding gift tax returns. Further, there is no indication the money was fraudulently or wrongfully dissipated. Under these circumstances, the pre-divorce gifts were not part of the parties' "property" that was subject to division. *See Anderson v. Anderson*, 2015 S.D. 28, ¶ 12, 864 N.W.2d 10, 16 (holding that fraudulently dissipated funds should be included in the marital estate, but money that was not fraudulently dissipated and no longer exists may be excluded).

[¶13.]     Joseph next argues that the court generally erred in its approach to dividing his premarital assets. Joseph contends that before "*including non-marital*

*property* as subject to division, the court must first consider the seven principle factors of property division[.]" (Emphasis added.) We disagree with this proposed analysis. Requiring consideration of the property division factors before "including" "non-marital property" in the marital estate incorrectly presupposes that all property is non-marital. South Dakota is an all property state: all property is subject to division regardless of its origins or title. *See* SDCL 25-4-44; *Muenster v. Muenster*, 2009 S.D. 23, ¶ 16, 764 N.W.2d 712, 717. Therefore, it is "[o]nly in the case where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support [that] a court *set it aside* as 'non-marital' property." *Muenster*, 2009 S.D. 23, ¶ 17, 764 N.W.2d at 717 (emphasis added).

[¶14.] We also note that except for the $344,667 in gifts, Joseph does not identify which of the hundreds of assets at issue in this case should have been set aside as non-marital property. Without such identification, this Court cannot determine Christina's contribution to and maintenance of each item of potentially excludable property as well as the necessity of using each item for Christina's support. We affirm the circuit court's award of approximately 11.98% of the parties' net assets to Christina. However, we reverse the circuit court's recapture and division of gifts made years before the divorce. On remand, the court should reduce the property award to Christina by $41,306.37.[5]

---

5. We remand with directions because the circuit court judge who decided this case retired. The court found that the net value of all assets was $9,154,455. The court awarded Christina $1,097,109, which is 11.98% of those assets. $41,306.37 is 11.98% of the $344,667 in gifts improperly divided.

*Alimony*

[¶15.] Joseph argues that the circuit court abused its discretion in awarding Christina alimony of $1,000 per month until Joseph's death, Christina's death, or Christina's remarriage. In finding of fact 131, the court stated the *legal requirement* for the award of permanent alimony: "[Christina] has a need for spousal support, or alimony, and [Joseph] has the ability to pay spousal support." Joseph contends the evidence in the record does not support this finding. He also contends the circuit court failed to consider Christina's need for support together with the property award that she received. In her appellate brief, Christina does not argue that she will have a need for support, she does not acknowledge the property award that she will receive, and she does not cite evidence or a court finding demonstrating her need for support. Instead, her sole argument is that the circuit court "considered" the appropriate factors.

[¶16.] "[W]hen a party requests permanent alimony they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need." *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D. 1991). In making the alimony determination, courts should also consider: "(1) the length of the marriage; (2) the respective earning capacity of the parties; (3) their respective age, health and physical condition; (4) their station in life or social standing; and (5) relative fault in the termination of the marriage." *Hagedorn v. Hagedorn*, 2012 S.D. 72, ¶ 11, 822 N.W.2d 719, 722. The court's equitable division of property and spousal support are to be considered jointly because "an award of

more assets can eliminate or reduce the need for spousal support[.]" *Walker v. Walker*, 2009 S.D. 31, ¶ 11, 765 N.W.2d 747, 751.

[¶17.]        Here, the circuit court considered the property division and spousal support together.  But every one of the court's findings of fact relating to spousal support contraindicates an award of permanent alimony.  The court found that the parties were married slightly less than six years; that Christina was thirty-one and Joseph was forty-seven; that Christina was a college graduate earning approximately $42,000 a year prior to the marriage and she was capable of earning a living after the marriage; and that "both parties [were] in good health and [had] no health problems that prevent[ed] either from gainful employment."  The court further found that: "After the equitable division of property, Christina's financial condition [will] be very good[,] " and that "[a]lthough the parties have enjoyed a good standard of living, there is no evidence that either party has attained any special station in life or social standing."  Lastly, the court found that both parties were "equally at fault in the termination of the marriage."  Moreover, the court made no findings and identified no facts supporting Christina's need for $1000 per month after the court's $1,097,109 cash equalization payment awarded in the property division.  As is significant here, the court made no finding that Christina's expenses would likely exceed her income after the divorce.  The court's finding on this matter merely restated the legal requirement of need for support.

[¶18.]        In *Scherer v. Scherer*, the circuit court awarded alimony, but made no finding regarding the need for support other than the recipient's statement that her expenses exceeded her income.  2015 S.D. 32, ¶ 11, 864 N.W.2d 490, 494-95.  She

also stated that if she were awarded the property she requested in the property division, she would not need her requested alimony. *Id.* The circuit court awarded the property she requested, which eliminated one basis of her claimed need for support. *Id.* We reversed, concluding that such a record did not support the need for the alimony that was awarded. *Id.*

[¶19.] This case is analogous. The court made no findings and cited no evidence demonstrating that Christina would be in need of support following the property division. This is understandable because even though Christina submitted a proposed budget at trial, she argued that she would be in need of support only because Joseph was objecting to her relocation from the Gary area to Sioux Falls. Christina contended that it was unlikely she could utilize her education and experience to find anything more than a minimum-wage job in that small community. But like the case in *Scherer* where the spouse's claim of need was extinguished by the award of property, Christina's claim of need was extinguished when the court allowed her to remain in Sioux Falls thereby eliminating the only basis upon which she claimed any need.

[¶20.] Additionally, this case is unlike our cases upholding an award of permanent alimony. When need has been found, the moving parties have introduced evidence of their earning capacity, or lack thereof, in comparison with their budget or expenses. *See Hagerdorn*, 2012 S.D. 72, ¶ 14, 822 N.W.2d at 723 (introducing evidence of expected wages and poor vocational possibilities); *Johnson v. Johnson*, 471 N.W.2d 156, 160 (S.D. 1991) (introducing evidence of no income and extensive counseling needed to be employable). Here, although Christina

introduced a budget, she introduced no evidence of her future earning capacity, evidence of her actual employment possibilities, or any other vocational evidence indicating that her budget would exceed her prospective income in Sioux Falls. "Permanent alimony . . . is an allowance for support and maintenance (i.e. the provision of food, clothing, habitation, and other necessaries) of the dependent/obligee spouse." *Fox*, 467 N.W.2d at 767. "It therefore follows that when a party requests permanent alimony they must establish that they have a need for support . . . ." *Id.* Here, Christina introduced evidence of her projected expenses of daily life, but she introduced no evidence establishing that she would be unable to pay those expenses. Consequently, Christina failed to meet her burden of proving need.

[¶21.]     This is not a case in which the question is whether the court properly weighed the evidence regarding alimony. Rather, this is a case in which neither the circuit court's findings nor the claimant's evidence included facts indicating that Christina's income and property award would be insufficient for her to acquire food, clothing, habitation and other necessaries—a foundational requirement for spousal support. Because Christina failed to carry her burden of introducing evidence of her need for support, we must reverse the award. A court abuses its discretion in awarding alimony when there is "insufficient evidence in the record to support findings necessary for spousal support[.]" *Havlik v. Havlik*, 2014 S.D. 84, ¶ 17, 857 N.W.2d 422, 427; *see Billion v. Billion*, 1996 S.D. 101, ¶ 37, 553 N.W.2d 226, 234

(reversing alimony award where there was no showing of a "need for financial assistance").[6]

*Attorney Fees and Costs*

[¶22.]    Joseph argues that the circuit court abused its discretion in awarding Christina $70,000 in attorney's fees and litigation costs. The court first determined that the reasonable amount requested by Christina was $122,741, which included fees, mediation costs, and appraisal costs.[7] The court then found that both parties had unreasonably increased litigation costs. With respect to Joseph, it found that he had unreasonably increased the time spent on the case because he bought and sold property during the pendency of the action in violation of the court's temporary restraining order. Joseph asserts this finding was clearly erroneous.

[¶23.]    Joseph admitted taking out a $275,000 note to purchase what he referred to as the "shed lake house" without court approval. Joseph also admitted trading in his old vehicle, purchasing a new vehicle on credit, and taking out a $90,000 line of credit on the Buffalo Ridge Resort. Joseph further admitted listing a home they owned in Arizona for sale and entering into a purchase agreement without court approval. Based on Joseph's testimony, we see no clear error in the circuit court's finding that Joseph unreasonably increased the time spent on the

---

6.    Because Christina failed to prove a need for support at trial, we do not address Joseph's claim that the court erred in analyzing the fault of the parties.

7.    No argument has been raised concerning the reasonableness or propriety of awarding fees and litigation costs. We therefore express no opinion on the matter.

case. The court did not abuse its discretion in awarding Christina a substantial portion of her attorney's fees and litigation costs.[8]

[¶24.] In sum, Joseph failed to establish that the circuit court abused its discretion in awarding primary physical custody to Christina and allowing her to remain in Sioux Falls. Joseph also failed to establish that the court abused its discretion in awarding Christina 11.98% of the parties' net assets. The court did, however, abuse its discretion by recapturing and dividing pre-divorce gifts and by awarding permanent alimony. Christina seeks appellate attorney's fees of $15,887. Considering our resolution of the issues in this appeal, Christina is awarded $10,000 in appellate attorney's fees.

[¶25.] GILBERTSON, Chief Justice, and KERN, Justice, concur.

[¶26.] SEVERSON and WILBUR, Justices, concur in part and dissent in part.

WILBUR, Justice (concurring in part and dissenting in part).

[¶27.] I write to dissent on the issue of alimony. It is not for this Court to sit as a fact finder and substitute its judgment for that of the circuit court. Our standard of review does not examine whether we would have made the same decision. In fact, SDCL 25-4-41 gives the circuit court discretion to grant "suitable allowance to" a spouse "as the court may deem just, having regard to the circumstances of the parties represented[.]" Yet, here, the majority opinion disregards the court's discretion. It also disregards "[o]ur oft-quoted rule on trials

---

8. We find Joseph's other arguments on this issue without merit.

before the court": "the trial court—not the review court" determines the weight to be accorded to witness testimony and the weight of the evidence at trial. *Mellema v. Mellema*, 407 N.W.2d 827, 831 (S.D. 1987).

[¶28.]     The majority opinion claims Christina introduced no evidence that could support a need for permanent alimony. But, at trial, Christina entered into evidence an exhibit detailing her projected monthly expenses and testified that she needed support for what she considered "a normal standard of living for something a life like we were living before or acceptable." When the circuit court awarded Christina alimony, it knew Christina would remain in Sioux Falls. The court also knew Christina's earning capacity. The court recognized that Christina's financial condition after the property division would be "very good." As the majority opinion recognizes, the circuit court stated the correct legal standard. Would we not assume that based on the evidence—Christina's exhibit, her testimony, the court's property division—the court determined that Christina had a need for support?

[¶29.]     For this Court to declare that Christina's need for support is extinguished based upon her ability to relocate to Sioux Falls means that this Court would deny a spouse alimony simply because the spouse may "obtain employment and support herself." *See Hagedorn*, 2012 S.D. 72, ¶ 14, 822 N.W.2d at 723 (quoting *Wallahan v. Wallahan*, 294 N.W.2d 21, 27 (S.D. 1979)). But we do not review the record to find how the court was wrong. "[W]e do not determine whether we would have made an original like ruling[.]" *Grode v. Grode*, 1996 S.D. 15, ¶ 7, 543 N.W.2d 795, 800. In our review, we decide "whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a

conclusion." *Id.* Here, the law and circumstances support the circuit court's decision. The circuit court specifically considered the factors relevant to an award of permanent alimony. It recognized Christina's ability to earn a substantial living—she "is educated and intelligent." But the court found relevant that Joseph's earning capacity is "substantially greater than Christina's," and that Christina "has largely been removed from the job market for seven years." Although Christina's financial condition after the property division is "very good," the court noted that Joseph's financial condition "will be much better." On this record, I cannot say "there is no basis in reason or evidence to support" the circuit court's decision. *See Johnson*, 471 N.W.2d at 163.

[¶30.]        I also disagree with the majority opinion's comparison to *Scherer*, 2015 S.D. 32, ¶ 11, 864 N.W.2d at 495. In *Scherer*, the circuit court failed to consider the alimony and property awards together. In this case, the court properly considered the alimony and property awards together. Also, in *Scherer*, we did not sit as a fact finder and foreclose wife's opportunity to receive alimony. We remanded for the circuit court to "consider the property division and alimony together to determine if Betty has demonstrated a need for alimony[.]" *Id.* ¶ 16. In this case, the majority opinion acts as a fact finder and forecloses any opportunity for Christina to receive alimony.

[¶31.]        This case is also unlike *Havlik*, 2014 S.D. 84, 857 N.W.2d 422. In *Havlik*, the spouse presented no evidence at the hearings to support her request for alimony. *Id.* ¶ 16. Here, Christina offered both evidence and testimony in support of her request for permanent alimony. Similarly, unlike the spouse in *Billion*,

Christina established her need for support to allow her "to live comfortably within the lifestyle she claims." *See* 1996 S.D. 101, ¶ 37, 553 N.W.2d at 234. Because "[w]e will not reverse a court's decision regarding alimony absent an abuse of discretion," I would affirm the circuit court's alimony award. *See Scherer*, 2015 S.D. 32, ¶ 10, 864 N.W.2d at 494.

[¶32.]    At the very least, we should remand this case and direct the court to enter more detailed findings of fact on the issue of alimony. We remanded in *Scherer* to allow the court to determine if the spouse in fact demonstrated her need for alimony. We similarly remanded in *Nickels v. Nickels*, for the circuit court to enter detailed findings to support its decision to award rehabilitative alimony. 2015 S.D. 40, ¶ 29, 865 N.W.2d 143, 153. Yet, again, we remanded in *Lovejoy v. Lovejoy*, for the circuit court to enter more specific findings on the husband's ability to pay alimony. 2010 S.D. 39, ¶ 11, 782 N.W.2d 669, 673.

[¶33.]    SEVERSON, Justice, joins this special writing.