#28104-a-SLZ
**2017 S.D. 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ADAM DUANE RICHARZ,                    Plaintiff and Appellant,

    v.

DENA KAY RICHARZ,                      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

PATRICK T. DOUGHERTY of
Dougherty & Dougherty, LLP
Sioux Falls, South Dakota          Attorneys for plaintiff and
                                   appellant.


VICTORIA M. DUEHR of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Sioux Falls, South Dakota          Attorneys for defendant and
                                   appellee.

* * * *

CONSIDERED ON BRIEFS ON
AUGUST 28, 2017
OPINION FILED **11/08/17**

ZINTER, Justice

[¶1.]     Adam and Dena Richarz were married in 2007 and obtained a divorce in 2016. In dividing their property, the circuit court awarded Adam his interest in an LLC, it required Adam to pay 25% of Dena's student-loan debt, and it ordered Adam to make a cash-equalization payment. Adam appeals. We affirm.

**Facts and Procedural History**

[¶2.]     Adam and Dena were childhood friends. They began dating in 2005 before Dena's senior year of high school. They became engaged in 2006, shortly after Dena began attending college. They were married in September 2007.

[¶3.]     Adam worked on his parents' farm. He was paid a salary of $1,200 per month by G&L, Inc., a corporation owned by his mother. Before the marriage, Adam and his parents formed Richarz Properties, LLC. Adam contributed $50,000 and his parents contributed $45,000. The contributions were used to purchase an 8.51-acre parcel of land (the "Lauck land") in McCook County. In 2008, the LLC purchased a 143.47-acre parcel of land referred to as the "Farrell land." Although Adam initially had slightly more than a 50% interest in the LLC, he transferred approximately 2% of that interest to his father in 2011—leaving Adam with a 48.63% interest. The transfer was in exchange for improvements made by Adam's parents to the Lauck land.

[¶4.]     Dena continued her college education after getting married. She stayed with Adam during weekends, breaks, holidays, and summer vacations. When at home with Adam, Dena worked on the farm and in the household. After completing her undergraduate degree, Dena began applying to veterinary schools

and was eventually accepted at a school in Scotland. She moved to Scotland in August 2011 and graduated in July 2016. Adam stayed in South Dakota and continued to work for his parents at the farm. Dena accumulated $397,822 in student-loan debt during the marriage.[1]

[¶5.]    Adam filed for divorce in December 2014. The parties agreed to a divorce on the grounds of irreconcilable differences. They proceeded to trial to divide the property. The primary disputes involved the division of Adam's interest in the LLC and the responsibility for Dena's student-loan debt.

[¶6.]    Adam and Dena retained experts to value the land and the LLC. Adam retained Tom Souvignier, a licensed real estate broker and real estate auctioneer, to value the land. Souvignier valued the Lauck land at $257,900 and the Farrell land at $665,000. Adam retained Jay Fullerton to value the LLC. Using Souvignier's land values, Fullerton valued Adam's interest in the LLC at $248,000, which included discounts for lack of marketability and lack of control.

[¶7.]    Dena retained Merle Miller, a licensed real estate broker and certified appraiser, to value the land. Miller valued the Lauck land at $210,000[2] and the Farrell land at $1,004,250. Dena retained Ericka Heiser to value Adam's interest in the LLC. Using Miller's value of the Farrell land, Heiser valued Adam's interest in the LLC at $595,000. Although Heiser testified she would apply lower discounts

---

1.    This amount was only that incurred for Dena's education during the marriage. Loans for premarital education were not classified as marital debt. Under the property division, Dena was solely responsible for premarital-education loans.

2.    The parties agreed to utilize Miller's appraisal of the Lauck land when valuing the LLC.

than Fullerton, she was of the opinion that Adam's interest should not be discounted at all.

[¶8.] The circuit court classified three items of property as marital: an investment worth $211, a bank account worth $502, and Adam's interest in the LLC. The court then adopted Miller's valuation of the land and Heiser's valuation of Adam's interest in the LLC. The court valued Adam's interest in the LLC at $595,000, but it subtracted the $50,000 that Adam had invested before the marriage. Adam was then awarded his interest in the LLC and the $211 investment, for a total value of $545,211. Because the court determined that Dena should be awarded one-half the value of the marital assets, it awarded her the $502 bank account, and it ordered Adam to make a cash-equalizing payment of $272,354.50. Finally, the court ordered that Dena would be responsible for paying her student loans but that Adam was allocated 25% of the responsibility ($99,455.50) in addition to the cash-equalization payment. Thus, Dena was to receive cash in the amount of $371,810 ($272,354.50 plus $99,455.50). However, because Dena testified she would be satisfied with $303,000, the court reduced the equalization payment to that amount.

[¶9.] Adam appeals, arguing the circuit court erred in valuing the Farrell land, valuing his interest in the LLC, awarding Dena one-half the value of the marital assets, and requiring him to pay 25% of Dena's student-loan debt. Dena requests appellate attorney fees.

**Decision**

*Valuation of Adam's LLC Interest*

[¶10.] Adam argues the circuit court erred in valuing his interest in the LLC, which was primarily based on the value of real estate. "The valuation of property involved in a divorce proceeding will not be overturned unless it is clearly erroneous." *Hill v. Hill*, 2009 S.D. 18, ¶ 14, 763 N.W.2d 818, 823. We will not disturb the circuit court's valuation so long as it falls "within the range of evidence presented to the court." *Christians v. Christians*, 2001 S.D. 142, ¶ 12, 637 N.W.2d 377, 380.

[¶11.] Adam contends the circuit court erroneously adopted Miller's valuation of the Farrell land. Miller used a comparable sales approach involving three similar properties, including one sale he conducted. The similar properties sold from $6,625 to $7,055 per acre. Based on the sale he conducted personally, which was located three and a half miles from the Farrell land, Miller testified that he believed he could have found a buyer who would have paid $7,100 per acre. Based on comparable sales, Miller valued the Farrell land at $7,000 per acre, for a total value of $1,004,250.

[¶12.] Adam contends Miller's belief that he could have sold the Farrell land for $7,100 per acre was speculative. Adam also contends Miller's valuation failed to consider a decrease in commodity prices. However, the circuit court considered conflicting evidence from two qualified experts indicating that the land was worth between $665,000 and $1,004,250. The court found that Miller's higher valuation was more persuasive not only because of Miller's personal experience, but also

because his "report was more specific, his comparables closer in time and close in distance, and the most reliable comparable was within 4 miles, sold in 2016, and went for $7,100 per acre." The court did not clearly err in adopting Miller's valuation.

[¶13.] With respect to the ultimate valuation of the LLC, Adam contends the court erred by failing to apply lack-of-control and lack-of-marketability discounts. Adam contends the court should have applied a lack-of-control discount because he did not have a majority interest. In his view, the court should have been bound by the literal language of the LLC's operating agreement, which provided that managers were to act collectively and that their votes were dependent on units of ownership. However, the valuation process is not limited by such rigid rules. Instead, "the determination of whether to apply a minority discount depends upon the evidence presented in each case," and the issue "must be dealt with by trial courts on a case-by-case basis." *Priebe v. Priebe*, 1996 S.D. 136, ¶ 17, 556 N.W.2d 78, 82.

[¶14.] Here, the circuit court did not discount Adam's interest for lack of control because it found that Adam was a manager who would likely be exercising full authority. The court was heavily persuaded by "the reality of the situation": i.e., the LLC was a family LLC that Adam had always managed, and the court could not envision a scenario where Adam would not be the manager. The court also considered the fact that Adam had transferred enough of his interest to reduce his ownership interest to less than 50% with no legal obligation to do so. Based on all

the evidence in the record, the court did not clearly err in refusing to apply a minority discount.

[¶15.]     With respect to a lack-of-marketability discount, the court ruled that no discount would be applied because it would not be fair to discount the parties' only significant asset that would likely never be sold.  "Whether or not it is fair or appropriate to apply a discount in a divorce case where no immediate sale is contemplated is for the trial court to determine based upon the evidence of the case." *Fausch v. Fausch*, 2005 S.D. 63, ¶ 10, 697 N.W.2d 748, 752-53.

[¶16.]     Dena's expert testified that discounting Adam's interest was not appropriate because it was unlikely a sale would ever occur.  Therefore, discounting the value in the divorce division would mean that Dena would receive a discounted interest while Adam would retain the full benefit of an undiscounted interest.[3]  The circuit court also noted that had the parties remained married, both would have shared the benefit of the LLC's income.[4]  Ultimately, the court reasoned that discounting the value would not impact Adam, who would always have the full value of his interest, but would "unfairly undervalue Dena's share of the marital estate."  The court did not clearly err in valuing Adam's interest without a lack-of-marketability discount.

---

3.     Adam's expert stated that he used a "cash in three days" standard to determine whether a marketability discount should be applied to an illiquid asset.  The circuit court rejected this standard as "unrealistic" when valuing a business asset in a divorce with a primary value in real estate as opposed to stocks and bonds.

4.     The evidence indicated that the LLC was close to paying off all its debt, after which point it would be generating a profit.

*Division of Property*

[¶17.]     Adam argues the circuit court abused its discretion in awarding Dena one-half the value of the marital assets, which was primarily composed of his interest in the LLC.[5]  Based on the bankruptcy code's definition of a "farm operation," Adam claims the court erred in finding that Dena significantly contributed to the parties' "farm operation" because he did not run a "farm operation" under that definition.  However, the label used by the court in describing the LLC's business is not determinative in dividing the marital estate.  Moreover, Adam has not appealed the court's decision to include his interest in the LLC as marital property.

[¶18.]     When making an equitable division of property, the circuit court "is not bound by any mathematical formula but shall make such award from the material factors before it, having due regard for equity and the circumstances of the parties." *Priebe*, 1996 S.D. 136, ¶ 11, 556 N.W.2d at 81.  In deciding to award Dena one-half the value of the marital assets, the court noted that part of the reason Dena pursued a veterinarian degree was to benefit the family farm by taking care of their livestock operation.  The court also noted that Dena helped on the farm whenever she returned home.  Ultimately, the court gave due regard to the parties' individual circumstances.  It found that both Adam and Dena had similar earning capacities but that Adam's interest in the LLC was "a significant asset to fall back on if he becomes incapacitated or is otherwise rendered unable to meet his financial

---

5.     We review the circuit court's division of property for an abuse of discretion. *Johnson v. Johnson*, 2007 S.D. 56, ¶ 16, 734 N.W.2d 801, 806.

obligations." Dena had no similar asset other than her veterinarian degree. The court properly considered the circumstances of the parties, and we cannot say that the court abused its discretion in awarding Dena the value of one half of the marital assets.

*Student Loans*

[¶19.]     Adam argues the circuit court abused its discretion in making Adam responsible for 25% of Dena's student-loan debt. He contends he should not be responsible for any of the loans because none of the proceeds were used for "family purposes." He also points out that he will not share in Dena's future income from being a veterinarian.

[¶20.]     Although an educational degree is not property subject to division, *Wehrkamp v. Wehrkamp*, 357 N.W.2d 264, 266 (S.D. 1984), student-loan debt may be included in, and allocated as, a part of the marital estate. *See Hill*, 2009 S.D. 18, ¶¶ 16-17, 763 N.W.2d at 824. Here, the circuit court acknowledged that Dena will be the only one to ever benefit from the proceeds of her degree. Therefore, it ordered that Dena would be responsible for most of the debt. The court made Adam responsible for a small portion of the debt because Adam and Dena entered into the marriage—and Dena attended school each year—with the understanding that they would incur this debt and that Dena's degree would be used to benefit the farm. We also note that Adam's ultimate responsibility became much less than the 25% initially assigned by the court. The court initially ordered Adam to make a cash-equalizing payment of $272,354.50. If Adam had been required to pay the full 25% of Dena's loans—$99,450—he would have been required to pay Dena a cash-

equalization payment of \$371,804.50 (\$272,354.50 plus \$99,450). However, Dena agreed to a payment of \$303,000. Therefore, Adam was actually ordered to pay only \$30,645.50 (\$303,000 minus \$272,354.50)—or 7.7%—of Dena's student loans. The circuit court did not abuse its discretion in assigning Adam a small part of Dena's student loans.

[¶21.] We affirm the circuit court's judgment, and we deny Dena's request for appellate attorney fees.

[¶22.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶23.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.