#28541-a-DG
**2019 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KATHRYN M. GREEN,                    Plaintiff and Appellee,

    v.

SCOTTY J. GREEN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TAMI BERN
Judge

* * * *

MICHELE LEWON of
Kollars & Lewon, PLC
Sioux City, Iowa                    Attorneys for plaintiff
    and appellee.


REBECCA A. NELSON of
Rawlings, Ellwanger, Mohrhauser,
 Nelson & Roe, LLP
Sioux City, Iowa                    Attorneys for defendant
    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 12, 2018
OPINION FILED **01/09/19**

GILBERTSON, Chief Justice

[¶1.]	Scotty J. Green (Scotty) appeals from a judgment and decree of divorce from his wife Kathryn M. Green (Kathy). Scotty asserts the circuit court abused its discretion in awarding attorney fees, calculating child support, and dividing property. We affirm.

## Facts and Procedural History

[¶2.]	Kathy and Scotty were married November 21, 2003, in Elk Point. During the marriage, Kathy and Scotty adopted two biological siblings, B.S.G. and B.M.G., in Iowa. B.S.G. was born in 2002, and B.M.G. was born in 2003. Both children were considered to have special needs because of their biological mother's drug use. Kathy and Scotty received an adoption subsidy for each child, which was set to be paid monthly until the children reach the age of majority.

[¶3.]	After living a short time in Scotty's pre-marital home, the couple purchased a home in Dakota Dunes on Sagebrush Pass. They later built another home in Dakota Dunes on Bluestem Trail (marital home). During the marriage, Kathy worked at HyVee in Sioux City, Iowa, as a pharmacy tech and later as a personal shopper. At the time of trial, her wages were $19.25 per hour, and she worked an average of 32 hours per week. Scotty was employed as the Director of Operations for a McDonald's franchise in Sioux City. After working in that position for 30 years, Scotty was earning approximately $140,000 per year. In 2014, the franchise was sold due to the owners' divorce. Scotty had been approved by McDonald's to own his own restaurant but was not offered one at the time of the

sale. As a result, Kathy and Scotty began to search for other franchise opportunities.

[¶4.] Eventually, Scotty and Kathy and three other couples formed their own limited liability company: OCSC, LLC. OCSC signed a franchise agreement to own and operate an Old Chicago restaurant in Sioux City. Scotty and Kathy invested $148,250 in OCSC between 2014 and 2017. Scotty was employed as an owner-operator of the restaurant at a salary of $116,000 per year. As owners, Kathy and Scotty were required to personally guarantee much of the OCSC debt, including debt related to the franchise agreement, the lease, and operating loans.

[¶5.] During the marriage, the parties argued over spending money, OCSC, and the proper way to raise their children. In October 2016, Scotty moved out of the marital home. On October 5, 2016, Kathy filed for divorce. She also filed for a protection order on October 13, 2016. A hearing was held on December 19, 2016, and the circuit court dismissed the protection order. On January 6, 2017, the court released a temporary order awarding the couple joint legal custody of the children. Kathy was awarded primary physical custody, possession of the marital home, $1,357 per month in child support, and $1,300 per month in spousal support.

[¶6.] In February 2017, Scotty was terminated from his position with OCSC due to performance-based issues. Scotty's employment agreement contained a non-compete clause that prohibited him from working in another restaurant within a 250-mile radius for two years after termination. Despite Scotty's termination, he and Kathy retained their ownership interest in OCSC. In May 2017, Scotty found new employment working at Home Depot at a wage of $16 per hour.

[¶7.]    Also in February 2017, Kathy filed an application for order to show cause as to why Scotty should not be held in contempt for failure to make timely support payments.  Scotty filed a resistance to the application.  Kathy moved to continue the hearing on the application for order to show cause and later moved to dismiss the application on April 5, 2017, before a hearing was held.  Kathy's counsel drafted a second application in May 2017 that was never filed.  In March 2017, Scotty filed an application for an emergency hearing and for the appointment of a custody evaluator.  Kathy filed a resistance to the application, and Scotty filed a response, but the parties ultimately resolved the issue without a hearing.  In July 2017, Scotty filed an application for modification of child support claiming a downward change in income.  A hearing was held on August 29, 2017, and the court granted Scotty's application.

[¶8.]    Shortly before trial, Scotty and Kathy agreed to and signed a parenting plan providing for joint legal custody and shared physical care of their children.  The parties agreed that the children would alternate weeks with the parties and be exchanged on Sunday evenings.  The circuit court adopted the parenting plan.  All other matters proceeded to a bench trial before the circuit court on November 16 and 30, 2017.

[¶9.]    On January 26, 2018, the circuit court entered its findings of fact, conclusions of law, and a judgment and decree of divorce granting the divorce to Kathy on the grounds of irreconcilable differences.  The court also ordered that: (1) Scotty pay Kathy $25,000 in attorney fees; (2) Kathy receive the monthly adoption subsidies from the State of Iowa in the amount of $523.50 for each child; (3) the

parties divide credit card debt and that Scotty pay a $40,183.10 cash settlement; and (4) each party pay any outstanding judgments against them not satisfied by the sale of the marital home within one year of the date of the judgment and decree of divorce. Scotty appeals the court's decision raising the following issues for review:

1. Whether the circuit court abused its discretion in awarding Kathy $25,000 in attorney fees.

2. Whether the circuit court erred and abused its discretion in calculating child support and awarding adoption subsidies to Kathy.

3. Whether the circuit court abused its discretion in dividing the credit card debts of the parties and requiring Scotty to pay a $40,183.10 cash property settlement.

4. Whether the circuit court abused its discretion in requiring Scotty to pay any judgments against him not covered by the sale of the house within twelve months from the date of the judgment and decree of divorce.

## Standard of Review

[¶10.] "We review a circuit court's factual findings . . . under the clearly erroneous standard of review." *Osdoba v. Kelley-Osdoba*, 2018 S.D. 43, ¶ 9, 913 N.W.2d 496, 500 (quoting *Terca v. Terca*, 2008 S.D. 99, ¶ 18, 757 N.W.2d 319, 324). "We will overturn the circuit court's findings of fact on appeal only when a complete review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Miller v. Jacobsen*, 2006 S.D. 33, ¶ 19, 714 N.W.2d 69, 76). We review a circuit court's legal conclusions de novo. *Huston v. Martin*, 2018 S.D. 73, ¶ 10, 919 N.W. 2d 356, 361.

[¶11.] In divorce actions, we review an award of attorney fees, determinations as to child support, and determinations in the division of property for an abuse of

discretion. *Id.* (attorney fees and division of property); *Anderson v. Anderson*, 2015 S.D. 28, ¶ 6, 864 N.W.2d 10, 14 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822) (child support). "An abuse of discretion occurs when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Osdoba*, 2018 S.D. 43, ¶ 10, 913 N.W.2d at 500 (quoting *Terca*, 2008 S.D. 99, ¶ 18, 757 N.W.2d at 324).

## Analysis & Decision

[¶12.]       *1.     Whether the circuit court abused its discretion in awarding Kathy $25,000 in attorney fees.*

[¶13.]       It is well established that a circuit court must employ a two-step analysis in making a discretionary decision to award attorney fees in divorce actions under SDCL 15-17-18. *Streier v. Pike*, 2016 S.D. 71, ¶ 25, 886 N.W.2d 573, 581 (citations omitted).

> First, the court must determine what constitutes a reasonable attorney's fee. This requires consideration of[:] (1) the amount and value of the property involved[;] (2) the intricacy and importance of the litigation[;] (3) the labor and time involved[;] (4) the skill required to draw the pleadings and try the case[;] (5) the discovery utilized[;] (6) whether there were complicated legal problems[;] (7) the time required for the trial[;] and (8) whether briefs were required. Second, it must determine the necessity for such fee. That is, what portion of that fee, if any, should be allowed as costs to be paid by the opposing party. This requires consideration of the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Id.* (quoting *Nickles v. Nickles*, 2015 S.D. 40, ¶ 34, 865 N.W.2d 142, 154).

[¶14.]       Scotty concedes that the circuit court correctly decided the reasonableness of the $25,000 attorney fee awarded to Kathy, but he claims the court abused its discretion in finding that the award was necessary. As to the

necessity of the fee, Scotty claims that the amount of property awarded to each party was relatively the same due to Scotty's responsibility for OCSC loan guarantees and a potential increase in Kathy's 401(k). He asserts that at the time of trial, Kathy was earning a higher wage and that the circuit court improperly relied on his higher earning capacity and speculative future income. Scotty also maintains that Kathy has the immediate ability to pay her attorney fees because she was awarded almost all liquid assets in the property settlement. Finally, Scotty argues that even though he fell behind on child support due to an administrative issue, Kathy unreasonably delayed the divorce trial by filing a contempt action against him. Overall, Scotty believes these factors show that it was not necessary for the circuit court to award Kathy attorney fees.

[¶15.]      In its findings of fact and conclusions of law, the circuit court considered all required factors in determining the necessity of the attorney fee award. The court noted the following:

> [Kathy] received property in an amount almost $38,000 less than [Scotty]; the parties' relative incomes are similar; [Scotty's] property award in regard to the Old Chicago interest is not liquid, however, the [c]ourt finds [Scotty] will be able to pay [Kathy's] attorney fees with the proceeds from the imminent sale of the marital residence; and the [c]ourt finds [Scotty] unreasonably increased the amount spent on the case by virtue of the contempt proceedings in this matter.

The circuit court's findings were supported by evidence in the record, including income, earning, and financial statements, partnership and real estate documents, and testimony of the parties. The findings were therefore free of clear error. The circuit court did not abuse its discretion in awarding attorney fees to Kathy.

#28541

[¶16.]    *2.    Whether the circuit court erred and abused its discretion in calculating child support and awarding adoption subsidies to Kathy.*

[¶17.]    Scotty and Kathy received two monthly adoption subsidies from the State of Iowa for their children in the amount of $523.50 each. The circuit court awarded both subsidies to Kathy and included them as part of Kathy's income in the calculation of child support. Scotty first asserts that it was an abuse of discretion for the court to count the adoption subsidies as part of Kathy's income. He also claims the circuit court abused its discretion by awarding *both* subsidies to Kathy. He contends that the circuit court made no findings of fact regarding who historically paid the children's expenses or why it was equitable for Kathy to receive both separate subsidies when the parties agreed to share physical custody of the children.

[¶18.]    We first note again that determinations of child support are reviewed for an abuse of discretion. *Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d at 822. However, the precise question first presented here is whether either or both of the Iowa adoption subsidies *can* be treated as part of Kathy's income. This determination may affect a circuit court's award of child support to a party in a divorce action, but the determination itself is a question of law. "SDCL 25-7-6.3 lists the sources of 'monthly income' that may be used to determine child support obligations." *Crawford v. Schulte*, 2013 S.D. 28, ¶ 9, 829 N.W.2d 155, 157. SDCL 25-7-6.3 provides:

> The monthly net income of each parent shall be determined by the parent's gross income less allowable deductions, as set forth in this chapter. The monthly gross income of each parent includes amounts received from the following sources:

-7-

(1) Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus, or otherwise designated;

(2) Self-employment income including gain, profit, or loss from a business, farm, or profession;

(3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments, or insurance contracts;

(4) Interest, dividends, rentals, royalties, or other gain derived from investment of capital assets;

(5) Gain or loss from the sale, trade, or conversion of capital assets;

(6) Unemployment insurance benefits;

(7) Worker's compensation benefits; and

(8) Benefits in lieu of compensation including military pay allowances.

Overtime wages, commissions, and bonuses may be excluded if the compensation is not a regular and recurring source of income for the parent. Income derived from seasonal employment shall be annualized to determine a monthly average income.

We have previously held that this list is *non-exhaustive* and that other types of income may be included to calculate child support. *See Crawford*, 2013 S.D. 28, ¶¶ 10–11, 829 N.W.2d 1at 158 (concluding that a lump sum inheritance, not included in the list in SDCL 25-7-6.3, could be considered income for child support purposes).

[¶19.]     Though we have never addressed adoption subsidies as income for the purposes of child support, the payments fit the character of other types of income listed in SDCL 25-7-6.3. The payments are certain to be received monthly and will be paid continually at the current amount until each of Scotty and Kathy's children reach the age of majority. This makes the adoption subsidies much like the "[p]eriodic payments" listed in the statute. SDCL 25-7-6.3. The subsidies also extend for a longer time than other shorter-term benefits or payments such as

unemployment insurance or worker's compensation. *Id.* Because the list in SDCL 25-7-6.3 is non-exhaustive and because the adoption subsidies are a benefit that is certain to be received monthly—much like the other forms of income listed in the statute—we cannot say that the circuit court erred in counting the subsidies as part of Kathy's income.

[¶20.] Scotty also claims that the circuit court abused its discretion by awarding *both* adoption subsidies to Kathy. He claims that because the couple share in the physical care of the children, it would have been more equitable for each party to receive one subsidy. In its findings of fact, the court recognized several items of significance in relation to the award of both subsidies to Kathy. It considered the parties' agreement for joint physical custody and bound the parties to the terms of the agreement. The court noted that all child support obligations were based on the parties' relative incomes (including the adoption subsidies). The court found that the parties were similarly situated in terms of their income and financial situations and decided, based on the facts before it, to award the subsidies to Kathy. It also required Kathy to pay Scotty $151.42 per month in child support and required Kathy to pay 59% of all the children's medical expenses not covered by health insurance. The court's findings were based on the record and support the award of both adoption subsidies to Kathy. The findings are free of clear error, and there was no abuse of discretion.

[¶21.] 3. *Whether the circuit court abused its discretion in dividing the credit card debts of the parties and requiring Scotty to pay a $40,183.10 cash property settlement.*

[¶22.] "South Dakota is an all property state, meaning all property of the divorcing parties is subject to equitable division by the circuit court, regardless of

title or origin." *Ahrendt v. Chamberlain*, 2018 S.D. 31, ¶ 10, 910 N.W.2d 913, 918 (quoting *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d 210, 214). "The court has broad discretion in classifying property as marital or nonmarital." *Id.* "The circuit court [should] not [] become entangled in the semantics of marital versus nonmarital property." *Id.* (quoting *Halbersma*, 2009 S.D. 98, ¶ 10, 775 N.W.2d at 215). Further, "[w]hen a circuit court divides property, 'the law does not require perfection that would approach a mathematical certainty.'" *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 33, 871 N.W.2d 617, 628 (quoting *Pellegrin v. Pellegrin*, 1998 S.D. 19, ¶ 24, 574 N.W.2d 644, 649).

> Factors to consider when classifying and dividing property include: (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Ahrendt*, 2018 S.D. 31, ¶ 10, 910 N.W.2d at 918 (quoting *Terca*, 2008 S.D. 99, ¶ 20, 757 N.W.2d at 325).

[¶23.] Scotty claims that the majority of Kathy's credit card debt should have been categorized as nonmarital debt "because her profligacy and financial neglect created enormous credit card balances and the majority of the debt was incurred post-separation." He points to Kathy's testimony where she claimed the parties' credit card debt at the time of trial was $89,000. Scotty maintains that the parties' credit card debt was only approximately $8,784.62 before the parties separated. Scotty argues that Kathy should have been held solely responsible for the additional credit card debt she incurred after the date of separation.

[¶24.]     The circuit court made its findings of fact regarding marital and nonmarital debt in consideration of the parties' financial situation as a whole. The court found that Scotty had a significantly greater earning capacity than Kathy. Even though Scotty was still bound under the terms of a non-compete agreement at the time the decree or divorce was entered, the court reasoned that Scotty would eventually be able to return to earning a higher income. The court acknowledged that Kathy had accrued significant debt during the pendency of the divorce proceedings and that she was not a great money manager. However, the circuit court balanced that finding with the fact that Scotty had failed to submit court-ordered mortgage and child support payments, which caused "Kathy to incur further debt to provide those necessities" post-separation. The court also noted that "[m]aintenance of the parties' largest asset, the marital home, was almost exclusively Kathy's burden during the pendency of this action."

[¶25.]     The court's findings regarding post-separation debt in this matter were well-reasoned, supported by evidence in the record, and justified the court's decision to divide the credit card debt equally among the parties. The court did not abuse its discretion.

[¶26.]     4.     *Whether the circuit court abused its discretion in requiring Scotty to pay any judgments against him not covered by the sale of the house within twelve months from the date of the judgment and decree of divorce.*

[¶27.]     The circuit court ordered that any amount owed by the parties not covered by the sale of the marital home would be due one year from the entry of the judgment and decree of divorce. Scotty asserts that it was improper for the court to rely on proceeds from the sale of the marital home because, at the time the decree

-11-

was entered, the sale of the home had not closed and the court did not know what each party would receive in proceeds from the sale. Scotty later moved for the court to supplement the record with a check and closing disclosure for the sale of the marital home. The court granted the motion. The documents show that proceeds from the sale of the home amounted to $162,593.97, leaving each party with proceeds of approximately $81,296.99. The judgments against Scotty totaled $102,207.19. Subtracting the sale proceeds, Scotty notes that he still has $20,910.21 in outstanding judgments against him. He claims that with an income of $2,284 per month, no other liquid assets, and $30,000 in outstanding attorney fees, he will not be able to satisfy the judgment by one year from the date of the decree of divorce.

[¶28.]     The circuit court's decision as to the one-year deadline for payment was based on reason. The circuit court was not required to give Scotty a year to pay the judgments against him but did so anyway. The one-year deadline applied to Kathy as well. As to the division of property, the court noted a "disparity between the parties' competency to earn a living. At a minimum, [Scotty] has an earning capacity of twice that of [Kathy]." The court acknowledged that, at the time the decree was entered, Scotty was precluded from working in his preferred field of employment due to the non-compete provision of his former employment agreement. However, the court noted that over the course of a year from the date of the decree, the terms of the non-compete would end, and Scotty would return to a much higher earning potential and be able to cover the remaining judgments against him. These findings were free of clear error, and the circuit court did not abuse its discretion.

## Conclusion

[¶29.]     The circuit court did not abuse its discretion in awarding attorney fees, calculating child support, or dividing marital property.  We affirm.

[¶30.]     KERN and SALTER, Justices, and ELSHERE, Circuit Court Judge, concur.

[¶31.]     ELSHERE, Circuit Court Judge, sitting for JENSEN, Justice, disqualified.