#28550-aff in pt & rev in pt-SRJ
**2019 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRUCE JEROME TAYLOR,                             Plaintiff and Appellant,

    v.

KATHLEEN FAYE TAYLOR,                            Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

DANIEL J. NICHOLS of
Nichols & Rabuck, P.C.
Sioux Falls, South Dakota                        Attorneys for plaintiff and
    appellant.


RHONDA C. LOCKWOOD of
Lockwood & Zahrbock-Kool Law Office, P.C.
Sioux Falls, South Dakota                        Attorneys for defendant and
    appellee.

* * * *

CONSIDERED ON BRIEFS ON
FEBRUARY 19, 2019
OPINION FILED **05/15/19**

#28550

JENSEN, Justice

[¶1.]      Bruce Taylor appeals the circuit court's division of marital property and the awards of spousal support and attorney fees to Kathleen Taylor in an action for divorce.  Bruce also appeals contempt orders levied against him in the proceedings.  We affirm in part, reverse in part, and remand.

## Facts & Procedural History

[¶2.]      Bruce and Kathleen were married on June 6, 1987, and were both fifty-four years old at the time of trial.  Two children were born during the marriage.  The parties had ongoing health problems, but both were working.  Bruce initially worked as a carpenter before starting a home construction business, Taylor Made Homes.  Kathleen worked in administrative positions for a Sioux Falls television station and later at a bank.  At trial, the court found Bruce was earning $15,000 and Kathleen was earning $44,000, annually.  The parties' marital assets exceeded $1,000,000 and included a home and over $500,000 in retirement and savings accounts.

[¶3.]      The parties agreed that the marriage began to deteriorate in 2000.  Sometime in 2013, Bruce began an affair with another woman.  In March 2014, Bruce suffered a stroke.  After being released from the hospital, Bruce left the marital home and moved in with his paramour.  Bruce filed for divorce on May 27, 2014.  After the separation, Kathleen began working more hours at her job.  Initially, Bruce paid Kathleen $2,000 monthly, but later stopped providing support.

[¶4.]      In August 2014, Kathleen served Bruce with interrogatories and requests for production of documents.  Kathleen also made repeated requests for a

valuation of Taylor Made Homes and an identification and valuation of personal property in Bruce's possession. Kathleen filed a motion to compel discovery after Bruce failed to answer discovery for eleven months. Kathleen also motioned for appraisals of Taylor Made Homes and Bruce's personal property, as well as temporary child support and spousal support. After the motions were filed, Bruce's first attorney moved to withdraw indicating that Bruce was "unresponsive to repeated requests for information and assistance on this case."

[¶5.] A hearing was held September 14, 2015, and Bruce's attorney was permitted to withdraw. Bruce failed to appear or otherwise respond to Kathleen's motions. The circuit court granted Kathleen's motion to compel and ordered Bruce to obtain appraisals of the personal property and the business. Kathleen presented an affidavit in support of her motion for support, showing that she had paid over $150,000[1] in marital expenses during 2014 and 2015, while Bruce had only paid $17,000 over that same time. She also presented evidence that Bruce had received $100,000 in death benefits from his mother's life insurance policy and would eventually inherit more than $1,000,000. Kathleen claimed she had insufficient income to pay necessary expenses and did not have knowledge of Bruce's income. She requested monthly child support of $1,000 and monthly spousal support of $2,000. The court orally granted both motions. The written order signed by the

---

1. Kathleen provided no documentation or monthly breakdown for these expenses. More than $50,000 of expenses consisted of contributions to savings and retirement accounts, life and health insurance and medical expenses.

court differed from the oral order, requiring that Bruce pay $3,000 for spousal support rather than $2,000. A trial was scheduled for December 4, 2015.

[¶6.] Bruce appeared at the time set for trial, without counsel. He explained that he was unaware of the first hearing and was in the process of retaining an attorney. The court granted Bruce's request to continue the trial but found Bruce in contempt of the court's prior orders, including the order for interim support. Bruce was ordered to comply with the orders. The court also advised Bruce that if he failed to obtain appraisals consistent with the orders, the court would accept Kathleen's valuations. The written order reiterated this admonition.

[¶7.] In March 2016, Kathleen brought a second motion for contempt alleging Bruce had failed to pay interim support and comply with the other pretrial orders. That same month, Bruce's second attorney moved for, and was granted, permission to withdraw. At the hearing on Kathleen's motion, Bruce appeared and claimed that he was unable to pay the support obligations but failed to provide any financial information to the court. Bruce claimed he had not filed tax returns for the last several years and did not have the money to hire an accountant to prepare the past tax returns. Kathleen disputed this claim. She reiterated that Bruce had received $100,000 in life insurance benefits following his mother's death, but had made other purchases with this money, rather than pay support. The court again found Bruce in contempt and ordered that Bruce could purge the contempt by selling the recently purchased property so that he could pay an accountant to complete his taxes. The court also ordered Bruce to return several items of marital property to Kathleen. The court scheduled a trial date for September 8, 2016.

[¶8.] In July 2016, Bruce retained a third attorney and moved the court to reconsider interim support. He also sought to continue the September trial date. Bruce submitted an affidavit claiming that health complications following his stroke limited his ability to work and he was unable to pay Kathleen support. However, he provided no documentation showing his earnings. The affidavit also claimed that Kathleen did not need support because she had access to marital funds in the parties' savings and retirement accounts. Despite his failure to comply with the prior contempt order to sell certain property, Bruce claimed he needed to access marital funds to pay for the preparation of the prior years' tax returns and the appraisals. Following the hearing, the court maintained the September trial date to consider the issues of grounds for the divorce and child custody but rescheduled the issues of support and property division for trial on November 29. The court deferred ruling on Bruce's motions to access the marital funds and for relief from the support and contempt orders.

[¶9.] On September 30, Bruce again requested the court reconsider interim support and contempt orders. At this time, he filed a supplemental affidavit, along with completed individual tax returns for the years 2014 and 2015, showing earnings of just over $15,000 each year. At a hearing on October 13, the court permitted Bruce and Kathleen to each withdraw $20,000 from the marital savings account. Only Bruce withdrew $20,000. The court reserved ruling on the interim support and contempt issues until trial.

[¶10.] The weekend before trial, Bruce provided Kathleen with completed tax returns for the years 2009 through 2013 and an appraisal of his personal property.

Evidence at trial showed Bruce failed to list or appraise several items of personal property. Bruce also admitted he failed to appraise Taylor Made Homes because he believed the business had no value.

[¶11.]     At trial, Bruce testified he did not have sufficient income to pay interim or permanent spousal support. He presented evidence that he had given Kathleen over $35,000 since the separation but admitted no support had been paid for over a year. Bruce also admitted he had failed to return items of personal property to Kathleen as ordered by the court. Bruce testified that he sold a tractor in compliance with a court's second contempt order but used the money to pay his attorney fees and repair his truck rather than hire an accountant as ordered.

[¶12.]     Shortly after trial, the court granted a divorce, finding Bruce at fault due to extreme cruelty. The decree also resolved the child custody issues, but reserved ruling on the other unresolved issues. On June 7, 2017, the court filed a memorandum decision resolving the remaining issues. The court divided the marital property, awarding net assets valued at $661,666 to Kathleen and $463,957 to Bruce. The court calculated child support under the guidelines and ordered Bruce to pay $244 monthly. Consistent with these calculations, the court also re-considered the interim child support order, determining that Bruce owed $12,544 in back child support. The court did not reconsider the interim spousal support order, calculating the $3,000 monthly interim support order through the date of the court's ruling. The court deducted the $35,470 Bruce had paid to Kathleen and determined

that Bruce owed $28,530 for back support under the interim order.[2] The court also ordered Bruce to pay monthly spousal support of $1,000 for five years and an unspecified amount of attorney fees to Kathleen.

[¶13.]    Bruce raises several issues on appeal which we consolidate as follows:

1.    Whether the circuit court abused its discretion in dividing the assets.

2.    Whether the circuit court abused its discretion in determining issues of child support and spousal support.

3.    Whether the circuit court erred in finding Bruce in contempt of court.

4.    Whether the circuit court's award of attorney fees to Kathleen was an abuse of discretion.

## Standard of Review

[¶14.]    "Our standard of review is well-settled. We review the trial court's determination of child support, alimony[,] and the division of property under an abuse of discretion standard." *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822. "Abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Godfrey v. Godfrey*, 2005 S.D. 101, ¶ 11, 705 N.W.2d 77, 80. An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Thurman v. CUNA Mut. Ins. Society*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616 (quoting *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286).

---

2.    Most of the payments for which Bruce received credit were made prior to the time the court entered the interim order for spousal support.

[¶15.] Similarly, we employ the abuse of discretion standard when reviewing a grant or denial of attorney fees. *Hiller v. Hiller*, 2018 S.D. 74, ¶ 19, 919 N.W.2d 548, 554. "We review a trial court's findings as to contempt under a clearly erroneous standard." *Muenster v. Muenster*, 2009 S.D. 23, ¶ 15, 764 N.W.2d 712, 717 (quoting *Driscoll v. Driscoll*, 1997 S.D. 113, ¶ 10, 568 N.W.2d 771, 773). "The trial court's findings of fact are presumptively correct and the burden is upon appellant to show error." *Grode v. Grode*, 1996 S.D. 15, ¶ 19, 543 N.W.2d 795, 801.

## Analysis & Decision

> 1. *Whether the circuit court abused its discretion in dividing the assets.*

[¶16.] When determining an equitable division of property, the circuit court must consider:

> (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Novak v. Novak*, 2006 S.D. 34, ¶ 4, 713 N.W.2d 551, 552 (quoting *Billion v. Billion*, 1996 S.D. 101, ¶ 21, 553 N.W.2d 226, 232). "This court does not 'sit as a trier of fact, and thus we will not attempt to place a valuation on any of the assets involved in the property settlement.'" *Guindon v. Guindon*, 256 N.W.2d 894, 897 (S.D. 1977) (quoting *Stenberg v. Stenberg*, 240 N.W.2d 100, 102 (S.D. 1976)). "Any 'doubts about whether the evidence supports the circuit court's findings of fact are to be resolved in favor of the successful party's version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'" *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 20, 871 N.W.2d 617, 624 (quoting *Gartner*

*v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850). The circuit court "is not required to accept either party's proposed valuation." *Johnson v. Johnson*, 2007 S.D. 56, ¶ 41, 734 N.W.2d 801, 811.

[¶17.] Bruce argues that the court made several errors in its findings and in valuing the assets and liabilities of the parties. He claims these errors resulted in an inequitable division of the marital property and the court abused its discretion in dividing the assets.

     a. Valuation and division of the marital home.

[¶18.] Bruce argues that the circuit court erred by relying on a two-year-old tax assessment showing a value of $307,984 for the home, rather than a recent comparative market analysis showing a value of $386,281. He argues that *Richarz v. Richarz*, 2017 S.D. 70, 904 N.W.2d 76, required the court to use the more recent valuation. However, *Richarz* does not require that a court must always adopt the most recent valuation or comparative sale data for other properties. Instead, this Court held the circuit court did not clearly err in adopting a valuation based upon the most recent data and other considerations. 2017 S.D. 70, ¶ 13, 904 N.W.2d at 80. As this Court explained, valuation issues are appropriately determined on a case-by-case basis. *Id.*

[¶19.] Here, there was evidence that the home needed some repairs and the parties provided conflicting evidence concerning the value of the home. The court adopted a value within the range of evidence presented. *See Larson v. Larson*, 2007 S.D. 47, ¶ 21, 733 N.W.2d 272, 277-78 (using a valuation within the range of evidence presented was not error); *see also Giesen v. Giesen*, 2018 S.D. 36, ¶ 30,

911 N.W.2d 750, 758 (stating that the circuit court must determine a witness's credibility in a divorce case and "a court is not required to accept either party's proposed valuation"). On this record, we cannot say the court's valuation was clearly erroneous.

[¶20.] Bruce also claims that the court should have ordered the home sold and divided the proceeds or required Kathleen to pay him the equivalent of half the value of the home. He argues his significant contributions to building the home entitles him to such a result and the court abused its discretion in failing to do so. The court considered Bruce's contributions in its findings, along with other factors in awarding the home to Kathleen. Bruce's contribution in building the home was one, but not the only appropriate factor for the court's consideration in dividing this asset. The "court is not bound by any mathematical equation when making an equitable division of property . . . ." *Halbersma v. Halbersma*, 2007 S.D. 91, ¶ 11, 738 N.W.2d 545, 548. The circuit court did not err or abuse its discretion in the treatment of the marital home.

        b.    Valuation of Taylor Made Homes.

[¶21.] Bruce also argues the court erred in valuing Taylor Made Homes by accepting Kathleen's valuation. He argues that the business had no value aside from the equipment, which was already valued as part of the personal property. Bruce also argues Kathleen's $200,000 business valuation lacked "hard evidence" as required by *Larson*. In *Larson*, we considered whether the circuit court erred in adopting the wife's personal opinion of value for horses she acquired in her equine

business, rather than the opinion of the husband's "disinterested expert." In affirming the court's valuation, we concluded,

> [t]he origin of the "hard evidence" language indicates that [our precedents] *should not be read to require the trial court to reject proposed valuations of marital assets simply because they are based on a party's personal opinion.* This language more accurately serves as a reminder that it is the duty of the parties, not the trial court, to produce competent evidence regarding the value of their property.

2007 S.D. 47, ¶ 19, 733 N.W.2d at 277 (emphasis added).

[¶22.] Kathleen testified that Taylor Made Homes was a recognized, reputable homebuilder in the Sioux Falls housing market. She also claimed that Taylor Made Homes had more business and income potential than Bruce disclosed in pretrial discovery and in his testimony. Bruce failed to submit any "hard evidence" to support his opinion that the business had no value. Further, his failure to obtain a business valuation was in direct contravention of the court's pretrial orders. The court warned him twice that "if the appraisal is not done, we'll have no choice but to go with the amounts that are alleged by the Plaintiff to determine the assets and the marital estate." Bruce did not ask the court to reconsider this order or otherwise present convincing evidence to show Taylor Made Homes had no value. Under these circumstances, the court did not err in accepting Kathleen's valuation.

        c.      Valuation of Kathleen's liabilities.

[¶23.] Bruce claims the court abused its discretion when it deducted $44,781 as liabilities from Kathleen's asset value. Bruce claims most of the liabilities listed in Kathleen's columns had already been paid and included over $13,000 in attorney fees she paid to her attorney in the divorce. Excluding the attorney fees, nearly all

the liabilities listed in Kathleen's column were for joint obligations paid by Kathleen after the separation. Bruce provides no authority to support his claim that it was improper for the court to give Kathleen credit for these payments as part of the property division.

[¶24.] In *Green v. Green*, 2019 S.D. 5, 922 N.W.2d 283, we affirmed a circuit court's decision to put the majority of wife's credit card debt on husband because the debt was accrued in the pendency of that action and husband "failed to submit court-ordered mortgage and child support payments, which caused [wife] to incur further debt to provide those necessities post-separation." *Id.* ¶ 24 (internal quotation marks omitted). Bruce's failure to comply with multiple support orders and his responsibility for the delayed resolution of this case supports the court's determination of these liabilities.

d. Erroneous findings by the circuit court.

[¶25.] Bruce also contends the circuit court made several errors in its findings relating to the property division. He cites findings by the court (1) that Kathleen paid the mortgage on the house despite there being no mortgage; (2) that Bruce failed to provide a statement for his retirement account when a statement was introduced at trial; (3) that Bruce missed several court dates when he only missed one court date; (4) that Bruce was working 40 to 80 hours per week, when Bruce testified that he was struggling to work 40 hours per week because of health; (5) that Bruce failed to value or return certain personal property in violation of the court's orders; and (6) that the marital home was an income generating asset. Some of these findings are based on disputed evidence and are not clearly erroneous.

However, other findings by the court are inaccurate. Nevertheless, Bruce fails to show how any of the errant findings impacted the asset division or other determinations by the court. Accordingly, these erroneous findings are, at most, harmless error. *See* SDCL 15-6-61.

[¶26.] Bruce also claims that reversal is warranted because he was not given credit for the $100,000 death benefit he received from his mother's life insurance policy. "South Dakota is an 'all property state,' meaning that 'all property of either or both divorcing parties is subject to equitable division by the court, regardless of title or origin.'" *Midzak v. Midzak*, 2005 S.D. 58, ¶ 22, 697 N.W.2d 733, 739 (quoting *Evans v. Evans*, 1997 S.D. 16, ¶ 23, 559 N.W.2d 240, 245). Even inherited property "is not ipso facto excluded" as a non-martial asset. *Terca v. Terca*, 2008 S.D. 99, ¶ 21, 757 N.W.2d 319, 325. The court could have considered whether the life insurance proceeds should be included as marital property, but it did not do so. Bruce received the benefit of the life insurance proceeds being treated as non-marital, and neither party has appealed that resolution.

[¶27.] However, Bruce claims he used some of the life insurance proceeds he received in 2014 to support Kathleen after the separation. He claims he should have been given credit for these payments from a non-marital source. But, Bruce's accounting showed that over half of the money was deposited into his business account without a showing of how the money was spent. There were payments made to Kathleen from the business account, but Kathleen testified that she believed some of the money had been used to purchase a $70,000 parcel of real estate near his father's farm that had been titled in his girlfriend's name and not

treated as a marital asset. Bruce's accounting also showed that he spent more than $35,000 on a tractor, implements, and claimed rent paid to his girlfriend. The court also gave Bruce credit, against the interim support order, for all the payments made to Kathleen, including payments made before the order was entered. The court did not err in the treatment of the life insurance proceeds.

      e.      Whether the court abused its discretion in the overall division of marital property.

[¶28.]      Bruce argues the overall property division between him and Kathleen was inequitable and an abuse of discretion. Kathleen received 59% of the assets, while Bruce received 41%. However, Bruce concedes in his brief that this property division was not "wildly disproportionate" and primarily takes issue with the valuation of the items discussed above.[3]

[¶29.]      "When a circuit court divides property in divorce proceedings, 'there is no rigid formula that must be followed, nor any fixed percentage to which either party is entitled.'" *Osdoba v. Kelley-Osdoba*, 2018 S.D. 43, ¶ 19, 913 N.W.2d 496, 502 (quoting *MacKaben*, 2015 S.D. 86, ¶ 33, 871 N.W.2d at 628). The circuit court can also consider a party's "lack of candor . . . and lack of cooperation" in the court's proceedings when considering property division. *Giesen*, 2018 S.D. 36, ¶ 31, 911 N.W.2d at 758; *see also Edinger v. Edinger*, 2006 S.D. 103, ¶ 18, 724 N.W.2d 852, 858 (holding a circuit court award based in part on a party's lack of candor was reasonable).

---

3.      Bruce argues that if the court had adopted his valuations, Kathleen actually received 75% of the assets, while he only received 25%. However, we have affirmed the court's valuation determinations, so this argument is without merit.

[¶30.]     The court made several findings concerning Bruce's contemptuous behavior that made valuing and dividing the assets difficult. For well over a year, Bruce refused to respond to discovery requests seeking information regarding the marital property and failed to comply with court orders mandating that he do so. This included Bruce's failure to obtain a valuation of the business, failure to account for and value all the assets, and failure to provide tax returns and other financial information until the eve of trial. The court specifically found, "it is unclear to the court the extent of the marital assets that are currently held by [Bruce] as he has failed to make a proper accounting of what he holds." Bruce's failure in this respect not only meant that he failed to carry his burden of proving the value of his assets, but it also resulted in his loss of credibility with the court in terms of whether he had fully disclosed all his assets. Based upon its findings, the court determined that an equalization payment from Kathleen to Bruce was not appropriate.

[¶31.]     Bruce made several purchases after the separation, some of which the court found were not properly valued. There was also testimony concerning Bruce's possible involvement in purchasing land in his girlfriend's name and that Bruce may have received or been entitled to additional monies from his mother's estate that were not disclosed. Given Bruce's lack of compliance with discovery and court orders, the findings questioning the value of property held by Bruce were not clearly erroneous. On this record, the court did not abuse its discretion in not further equalizing assets between Bruce and Kathleen.

> 2.     *Whether the circuit court abused its discretion in determining issues of child support and spousal support.*

a.     Interim support orders.

-14-

[¶32.]     Bruce initially argues that the court erred in setting interim spousal and child support orders because the orders were made without evidence concerning the parties' income or assets.[4]  While the court was not provided income information, Kathleen had no income information available for Bruce due to his failure to answer discovery.  Further, Bruce did not oppose the request for interim support, and the court's interim order was not an abuse of discretion given the information available to the court at the hearing.  Bruce claims that Kathleen should have informed the court that they had significant money available in joint savings accounts.  However, he cites no authority limiting the court's ability to require the payment of interim support in order to preserve the marital estate.

[¶33.]     Bruce also challenges the $1,000 discrepancy between the circuit court's oral order and the initial written order for spousal support.  Bruce claims there is no evidentiary support or record explaining why the written order increased the amount of support by $1,000.  However, Bruce failed to raise this discrepancy to the circuit court.  "We have repeatedly stated that we will not address for the first time on appeal issues not raised below."  *Hiller v. Hiller*, 2015 S.D. 58, ¶ 23, 866 N.W.2d 536, 544 (quoting *Hall v. State ex rel. S.D. Dep't of Transp.*, 2006 S.D. 24, ¶ 12, 712 N.W.2d 22, 26).

---

4.     Bruce challenges the initial child support order of $1,000 monthly, but at trial the court re-calculated his child support obligation, including the delinquent child support.  Bruce does not challenge the amount of child support as re-calculated by the court pursuant to the guidelines in SDCL 27-7-6.2.  The court also gave Bruce credit for a child support garnishment of his bank account by the Department of Social Services.  Because the child support was re-calculated consistent with the guidelines, and the prior payment was properly credited, any issue as to the initial amount of child support is moot.

b.     Post-trial support determinations.

[¶34.]     Bruce argues that the circuit court abused its discretion by failing to reconsider the interim support order, and by maintaining the order until the court rendered its decision seven months after trial. He claims, based upon the evidence at trial, that the court should have terminated the interim award effective August 1, 2016, the first full month after Bruce filed the motion to reconsider interim support. Bruce also argues that the court abused its discretion in ordering monthly spousal support of $1,000 for a period of five years.

[¶35.]     "Factors to consider in awarding alimony include: 'the length of the marriage, earning capacity of the parties, financial condition after the property division, age, health and physical condition of the parties, the parties' station in life or social standing, and fault.'" *Hill*, 2009 S.D. 18, ¶ 20, 763 N.W.2d at 825 (quoting *Wilson v. Wilson*, 434 N.W.2d 742, 745 (S.D. 1989)). The party requesting spousal support must establish "a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need." *Kolbach v. Kolbach*, 2016 S.D. 30, ¶ 16, 877 N.W.2d 822, 828 (quoting *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D. 1991)). "The court must make findings of fact on all 'actual' and 'relevant' economic circumstances'" it relied on when making the determination to award alimony. *Havlik v. Havlik*, 2014 S.D. 84, ¶ 16, 857 N.W.2d 422, 426; *see also Scherer v. Scherer*, 2015 S.D. 32, ¶ 11, 864 N.W.2d 490, 494-95 (requiring the need for alimony to be established on the record). Alimony and other forms of spousal support must be considered jointly with the equitable division of property. *Kolbach*, 2016 S.D. 30, ¶ 16, 877 N.W.2d at 828.

[¶36.]     The court ordered Bruce to pay spousal support for a period of five years, despite Kathleen's apparent withdrawal of her request for spousal support.[5] In her post-trial brief to the circuit court, Kathleen stated, "*Kathleen is not requesting alimony*, hence, her continued financial viability is solely dependent on a fair property award and Bruce's good faith in paying his share." (Emphasis added). Consistent with her post-trial brief, Kathleen did not testify at trial concerning her need for, or Bruce's ability to pay, spousal support. *See id.* The court abused its discretion in awarding Kathleen spousal support for a period of five years.

[¶37.]     Although the court appropriately stated its intention to consider Bruce's motion on interim spousal support after it heard the evidence at trial, the court failed to address the motion in its ruling. Under the unique circumstances of this case, the court also abused its discretion by failing to reconsider the interim support order.

[¶38.]     Kathleen withdrew her request for ongoing support at trial. She presented no evidence showing the necessity for support after August 1, 2016, a required showing for interim support under SDCL 25-4-38. Additionally, based upon the court's findings, Kathleen was earning nearly three times the income Bruce was earning, and the amount of interim support was nearly three times his monthly income. The court re-calculated child support for a period of two years using the actual income figures but gave no consideration to the interim spousal

---

5.     In making the award, the court focused its attention on fault, stating: "[t]he crucial determining factor for alimony is the determination of relative fault in the termination of the marriage." Although fault is one factor to be considered for spousal support, we have never recognized fault as "the crucial determining" factor for an award of spousal support.

support order. After it became apparent at trial that there was no basis to maintain the interim support order, much less the amount of $3,000 monthly, the court should have retroactively terminated the support order from the time Bruce first contested the order.[6]

> 3. *Whether the circuit court erred in finding Bruce in contempt of court.*

[¶39.] The purpose of the civil contempt power is "to force a party 'to comply with orders and decrees issued by a court in a civil action . . . .'" *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 23, 729 N.W.2d 335, 344 (quoting *World Family Farms, Inc. v. Heartland Organic Foods, Inc.*, 2003 S.D. 45, ¶ 14, 661 N.W.2d 719, 723). "The required elements for . . . civil contempt are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Keller v. Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d 619, 622) (quoting *Harksen v. Peska*, 2001 S.D. 75, ¶ 12, 630 N.W.2d 98, 101). "To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon her." *Id.* ¶ 10 (quoting *Harksen*, 2001 S.D. 75, ¶ 17, 630 N.W.2d at 102). If a party claims they are unable to comply with a contempt order, the burden shifts to that party to prove the disability. *Talbert v. Talbert*, 290 N.W.2d 862, 863 (S.D. 1980).

---

6. Bruce filed his motion to reconsider the interim support order on July 19, 2016. In his brief, Bruce requests this Court retroactively terminate the support order as of the end of July 2016.

[¶40.]     Bruce argues the findings that his violations were willful and contumacious are clearly erroneous because he could not afford to pay the amounts needed to get his tax returns completed, provide support, or pay for appraisals of his property.  When a party claims inability to comply, the burden shifts to that party to show "a complete and detailed financial position statement for the court's review."  *Muenster*, 2009 S.D. 23, ¶ 35, 764 N.W.2d at 721.  A party's personal testimony is not sufficient.  *See Sazama*, 2007 S.D. 17, ¶ 20, 729 N.W.2d at 343.

[¶41.]     We have affirmed the interim spousal support order through July 31, 2016.  Further, Bruce has failed to challenge the discovery and appraisal orders which also formed the basis of the court's contempt findings.  These orders were appropriately entered by the court.

[¶42.]     Despite Bruce's income, the court was not clearly erroneous in finding that Bruce failed to prove he was unable to pay these support orders.  For nearly a year after these orders were entered, Bruce failed to provide information concerning his income and financial information, despite clear orders from the court to do so.  There was also evidence that Bruce had made several large purchases from the time of the separation instead of paying his support obligations.  Bruce received $100,000 in life insurance proceeds after the separation, which exceeded his total interim support obligations. Yet, Bruce failed to fully account for how most of these proceeds were expended.  It was not error for the court to reject Bruce's defense of inability to pay.  The court gave Bruce credit for $35,000 he paid to Kathleen, most of which was paid before the interim order was entered.  This does not excuse his refusal to comply with a clear order of the court for which he had notice.  The court's

finding that Bruce's disobedience of the court's orders was willful and contumacious is supported by the record.

[¶43.]    Finally, Bruce claims that the court failed to make findings to support its two pretrial contempt orders.  But, after the court heard all the evidence at trial, the court made specific findings in its memorandum opinion concerning Bruce's repeated, willful, and contumacious failure to comply with the court's orders.  Bruce was also afforded an opportunity to submit objections to these findings of fact and conclusions of law following the trial.  The court's findings are not clearly erroneous.

> 4.    *Whether the circuit court's award of attorney fees to Kathleen was an abuse of discretion.*

[¶44.]    Following the trial, in its June 8, 2017, memorandum decision, the court found Bruce in contempt and ordered "[Kathleen] is granted attorney fees." The order did not specify an amount of attorney fees awarded.  The court's memorandum opinion explains that the attorney fees were premised on his "failure to comply with the [court's] order" and his noncompliance "rose to the level of contempt."  Bruce argues the circuit court's order for attorney fees is in error because (1) Kathleen did not provide the court with an itemization of her attorney fees and costs, (2) the court failed to consider the $3,000 Bruce already paid in attorney's fees, and (3) the court erred by failing to specify the amount of attorney fees awarded to Kathleen.

[¶45.]    SDCL 15-17-38 permits a court to award attorney fees in a divorce. Before awarding attorney fees under the statute, the court must apply a two-step analysis.  *Streier v. Pike*, 2016 S.D. 71, ¶ 25, 886 N.W.2d 573, 581.  First, the court must consider whether the requested fees are reasonable.  *Id.*  Second, the court is

required to consider "the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case." *Id.* (quoting *Nickles v. Nickles*, 2015 S.D. 40, ¶ 34, 865 N.W.2d 142, 154).

[¶46.]    Here, Kathleen failed to submit an itemization of attorney fees and the court did not consider the reasonableness of the fee request. "Without any itemization or time frame for . . . Wife's attorney's fees[,] the trial court did not have sufficient information upon which to conclude that an award . . . was reasonable. This also makes it impossible for us to cogently review the issue." *Dooley v. Dooley*, 1999 S.D. 136, ¶ 27, 601 N.W.2d 277, 282; *see also Am. Legion Home Ass'n. Post 22 v. Pennington Cty.*, 2018 S.D. 72, ¶ 39, 919 N.W.2d 346, 354; *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 34, 707 N.W.2d 85, 100. Where a party fails to submit an itemized statement to allow the court to determine reasonableness of the attorney fees, "we reverse the award of attorney's fees . . . and remand the matter to the trial court in order to admit [] prior itemized attorney's fee statements into evidence and determine a reasonable fee based upon them and the itemized statement already received."[7] *Dooley*, 1999 S.D. 136, ¶ 27, 601 N.W.2d at 282. The court also failed to make any findings of fact or conclusions of law under either step of the analysis. "This Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees. Without findings of facts and conclusions of law there is nothing to review." *Streier*,

---

7.    In the property division, the court gave Kathleen credit for $13,000 in attorney fees she paid to her attorney during the divorce. If the court awards any of the attorney fees for which Kathleen was given a credit, the court should consider whether an adjustment should be made in the property division.

2016 S.D. 71, ¶ 26, 886 N.W.2d at 581 (quoting *Nickles*, 2015 S.D. 40, ¶ 35, 865 N.W.2d at 154).

## Conclusion

[¶47.] The property division, child support orders, contempt determinations, and interim spousal support orders through July 31, 2016, are affirmed. The other spousal support awards, including the five years of spousal support, and award of attorney fees are reversed and remanded. On remand, the circuit court should terminate the court's orders for spousal support after July 31, 2016 and recalculate the amount of back spousal support remaining to be paid, less the credit the court previously gave Bruce for support that was paid. On remand, any attorney fees requested by Kathleen should be based upon an itemized statement of fees provided by Kathleen and the court should consider any such request under the two-step analysis in SDCL 15-17-38 and whether any adjustment should be made in the property division if attorney fees are awarded.

[¶48.] Finally, Kathleen has requested appellate attorney fees in the amount of $4,583.35. We award Kathleen appellate attorney fees of $2,291.66.

[¶49.] GILBERTSON, Chief Justice, and KERN and SALTER, Justices, and KONENKAMP, Retired Justice, concur.